**MARUBENI AMERICA CORP.,**
**Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–**
**Appellant.**

No. 93–1467.

United States Court of Appeals,
Federal Circuit.

Sept. 7, 1994.

Gail T. Cumins, Sharretts, Paley, Carter & Blauvelt, P.C., New York City, argued, for plaintiff-appellee. With her on the brief, were Ned H. Marshak and Peter Jay Baskin.

Saul Davis, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellant. With him on the brief, were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Carla Garcia–Benitez and Edith Sanchez Shea, Attorneys. Also on the brief, was Karen P. Binder, Office of the Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, of counsel.

Wesley K. Caine and C. Dean McGrath, Jr., Stewart & Stewart, of Washington, DC, were on the brief, for amicus curiae, American Auto. Mfrs. Ass'n, Inc.

John B. Rehm and Munford Page Hall, II, Dorsey & Whitney, of Washington, DC, were on the brief, for amicus curiae, Ass'n of Intern. Auto. Mfrs. and Walter E. Huizenga, of Alexandria, VA, was on the brief, for amicus curiae, American Intern. Auto. Dealers Ass'n.

Before RICH, NEWMAN, and MAYER, Circuit Judges.

RICH, Circuit Judge.

The United States (the government) appeals the May 14, 1993, judgment of the Court of International Trade (CIT), No. 90–04–00210, 821 F.Supp. 1521, holding that 1989 and 1990, two door, two-wheel and four-wheel drive, Nissan[1] Pathfinder (Pathfinder) vehicles are correctly classified under heading 8703.23.00 (8703) of the Harmonized Tariff Schedule of the United States (HTSUS) as motor vehicles principally designed for the transport of persons. We affirm.

## I

## BACKGROUND

### A. *The Merchandise*

The merchandise at issue is a two door, two-wheel or four-wheel drive, dual-purpose or multipurpose passenger vehicle, generally referred to as a compact sports utility vehicle. The Pathfinder does not have a cargo box or bed like a truck. Instead, its body is one unit that is configured much like an ordinary station wagon in that it has rear seats that fold forward, but not flat, for extra cargo space. These seats, however, are not removable. The spare tire is housed within the cargo space or alternatively, it may be attached outside the vehicle on the rear hatch. The rear hatch operates like those on a station wagon; it has a window that may be opened to place small packages in the cargo area without opening the tailgate. The Pathfinder is mechanically designed for both on- and off-road use.

### B. *Conversion to the Harmonized System.*

On August 23, 1988, the Omnibus Trade and Competitiveness Act of 1988 (Pub.L. 100–418) was enacted. The Act adopted the new tariff nomenclature—the HTSUS, which became effective on January 1, 1989. The new nomenclature system developed as follows. The Trade Act of 1974 mandated that the United States participate in the development of an international product nomenclature known as the Harmonized System. The

---

1. Marubeni America Corp. is the importer of record for the subject merchandise. Nissan Mo-

tor Corporation U.S.A. is the real party in interest and is so treated throughout this opinion.

Harmonized System is a detailed product classification system developed through the Customs Co–Operation Council (CCC). The System provides a common core language for trade; it does not, however, carry any obligations with respect to tariff rates. To facilitate the conversion from the then existing Tariff Schedules of the United States (TSUS) to the HTSUS, a draft conversion was prepared by the International Trade Commission (ITC). The conversion report cross-references items under the TSUS with the HTSUS and vice versa. USITC Pub. 2030 (1983). This draft conversion was reviewed by government agencies, the private sector, and the trading partners. Later that year, the conversion document was republished for private sector review.

 There are no HTSUS headings that expressly include vehicles for transport of goods and persons as did 692.10 TSUS. The final cross-referencing report, however, paired 692.10 TSUS, "motor vehicles for the transport of goods and persons," with 8703 HTSUS, "motor vehicles principally designed for the transport of persons;" and 692.02, "automotive trucks," with 8704 HTSUS, "motor vehicles for the transport of goods." *See* USITC Pub. 2051 (1988). Note, however, that the TSUS/HTSUS cross-references should not be viewed as a substitute for the traditional classification process. TSUS/HTSUS Cross Reference Clarification, 53 Fed.Reg. 27,447. Prior to January 1, 1989, the effective date of the HTSUS, the Pathfinder was classified under 692.10 TSUS (motor vehicles for the transport of goods and persons), 2.5% *ad valorem*. While not determinative, prior classification of Pathfinders is instructive. H.R.Con.Rep. No. 576, 100th Cong., 2nd Sess. 549–50 (1988), 1988 U.S.C.C.A.N. 1547. Legislative history also shows that any changes in the rates of duty from the TSUS to the HTSUS are consequential to the process of converting to the new nomenclature. *Id.* at 1581.

C. *Proceedings below.*

The Pathfinder was classified by the United States Customs Service (Customs) under 8704.31.00 (8704) of the HTSUS as a "motor vehicle for the transport of goods." Pursu-

ant to 9903.87.00 of the HTSUS, a 25% *ad valorem* duty was assessed.

Nissan administratively protested this decision, pursuant to 19 U.S.C. § 1514, claiming that the Pathfinder should be classified as "motor cars and other motor vehicles principally designed for the transport of persons ... including station wagons" under 8703 HTSUS. This protest was denied. Nissan then brought an action in the CIT. The CIT conducted a three week trial *de novo*, pursuant to 28 U.S.C. § 2640, that included test driving the Pathfinder and comparison vehicles, videotape viewing, and extensive presentation of both testimonial and documentary evidence. The government argued that the Pathfinder is more like a pick-up truck; therefore, it was a "motor vehicle for the transport of goods." The CIT concluded that Customs' classification of the Pathfinder under 8704 HTSUS, "motor vehicle for the transport of goods," was incorrect, and that the correct classification was under 8703 HTSUS, "motor vehicle principally designed for the transport of persons." The duty assessed under 8703 HTSUS is 2.5% *ad valorem*. The United States now appeals from the judgment of the CIT. We have jurisdiction under 28 U.S.C. § 1295(a)(5) (1988).

II

ANALYSIS

 The issue is whether the Pathfinder has been classified under the appropriate tariff provision. Resolution of that issue entails a two step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. The first step is a question of law which we review *de novo* and the second is a question of fact which we review for clear error. *Stewart–Warner Corp. v. United States,* 748 F.2d 663, 664–65, 3 Fed.Cir. (T) 20, 22 (Fed.Cir.1984).

The government asserts that the CIT erred by applying improper and inconsistent standards, and that the Pathfinder is not primarily designed for the transport of per-

sons based on the practice of Nissan and the industry.

### A. *Proper meaning*

■ It is well settled that "[t]he ultimate issue, whether particular merchandise has been classified under an appropriate tariff provision, necessarily depends on the meaning of the terms of that provision, which is a question of law subject to *de novo* review." *Lynteq, Inc., v. United States,* 976 F.2d 693, 696 (Fed.Cir.1992). To determine the proper meaning of tariff terms as contained in the statute, the terms are "construed in accordance with their common and popular meaning, in the absence of contrary legislative intent." *E.M. Chemicals v. United States,* 920 F.2d 910, 913 (Fed.Cir.1990). "To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789, 6 Fed.Cir. (T) 121, 125 (Fed.Cir.) *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

The two competing provisions of the HTSUS are set forth below.

8703 Motor cars and other motor vehicles principally designed for the transport of persons (other than those of heading 8702), including station wagons and racing cars.

8704 Motor vehicles for the transport of goods.

There are no legally binding notes to these headings that are relevant to the classification of dual-purpose vehicles such as the Pathfinder; therefore, we need only look to the common meaning of the terms as they appear above.

■ By the express language of 8703, "motor vehicle principally designed for the transport of persons," it is clear that the vehicle must be designed "more" for the transport of persons than goods. *Webster's*

*Third New International Dictionary of the English Language,* Unabridged (1986) defines "principally" as "in the chief place, chiefly;" and defines "designed" as "done by design or purposefully opposed to accidental or inadvertent; intended, planned." Thus, if the vehicle is equally designed for the transport of goods and persons, it would not be properly classified under 8703 HTSUS. There is nothing in the legislative history that indicates a different meaning.

The government argues that "the correct standard to be utilized in determining the principal design of any vehicle must be its construction—its basic structure, body, components, and vehicle layout—and the proper question to be asked is whether that construction is uniquely for passenger transportation." This standard is clearly at odds with Customs' interpretation in its March 1, 1989, memorandum providing guidance in applying these headings to sports utility vehicles. Customs stated: [2]

> *Design features,* whether they accommodate passenger transport or cargo transport, or both, *are of two types both of which are relevant in determining the proper classification of a sports-utility vehicle.* First are what may be regarded as *structural, or integral design features* such as basic body, chassis, and suspension design, ... style and structure of the body [control access to rear]. The second type of design features, *auxiliary design features* are also relevant when determining whether, on the whole, the transport of persons was the principal design consideration. *Neither type by itself can be considered determinative on the issue of the purpose for which the vehicle was principally designed.* (emphasis added).

Thus, "requir[ing] that the resulting product be uniquely constructed for the purpose of transporting persons," to the exclusion of any other use, is a constrictive interpretation of the terms with which we cannot agree.

■ There is nothing in the statute, legislative history, or prior Customs decisions

---

**2.** Additionally, Customs' March 1, 1989 memorandum, while instructive, was not based on a thorough factual dissection of the Pathfinder as that before the CIT. Rather, it is a general memorandum providing *guidance* for interpreting the relevant headings relating to sports utility vehicles and vans. Albeit instructive, this document is not determinative.

that would indicate that "principally designed" refers only to a vehicle's structural design as asserted by the government. To answer the question, whether a vehicle is principally designed for a particular purpose, not uniquely designed for a particular purpose, one must look at both the structural and auxiliary design features, as neither by itself is determinative.

■■■ The government's exclusionary construction fails on another point. Heading 8703 HTSUS specifically includes "station wagons," which are not uniquely designed for transport of persons, rather, they are designed as dual-purpose vehicles for the transport of goods and persons. The Pathfinder, like a station wagon, is a vehicle designed with a dual-purpose—to transport goods and persons.

The specific mention of "including station wagons" in 8703 can affect proper classification when dual-purpose vehicles are at issue. The Explanatory Notes define "station wagon" as "vehicles with a maximum seating capacity of nine persons (including the driver), the interior of which may be used, without structural alteration, for the transport of both persons and goods." Customs Co-operation Council (CCC), 4 Harmonized Commodity Description and Coding System, Explanatory Notes, Heading No. 87.03 (1st ed. 1987). As noted by the CIT, the Pathfinder meets the literal definition of a station wagon. Even so, the CIT accorded proper weight to the definition offered by the CCC when it stated that the "Explanatory Note definition of station wagons should not be read too literally."[3] As above, we can look to Customs interpretations for instruction on the intended meaning of "including station wagons." Again in its March 1, 1989, memorandum Customs stated:

> [G]iven the wording of the heading and corroborating indications in the working papers of the Customs Co-operation Council, the correct reading appears to be that the phrase 'including station wagons' was not intended to expand upon or be an exception to the requirement that articles

are classifiable in heading 8703 only if they are 'principally designed for transport of persons.' It should be emphasized that this interpretation does not read the station wagon reference out of the statute; *its inclusion is necessary to clarify that the cargo-carrying capacity of dual-purpose vehicles does not foreclose a finding that they are principally designed to carry persons.* (emphasis added)

Therefore, notwithstanding the fact that a vehicle may fit the definition of a station wagon and that the term is expressly included in 8703 HTSUS, that vehicle is not automatically included in or excluded from 8703 HTSUS classification. It necessarily follows that correct interpretation of 8703 HTSUS requires a determination of whether or not the vehicle was "principally designed for the transport of persons," and not merely a finding that it is within the definition of a "station wagon," unless of course it is unquestionably a station wagon. The Pathfinder is not the latter.

In summary, we find that the proper meaning of "motor vehicle principally designed for the transport of persons" to be just that, a motor vehicle principally designed for the transport of persons. While we find it unnecessary to assign a quantitative value to "principally," the statutory language is clear that a vehicle's intended purpose of transporting persons must outweigh an intended purpose of transporting goods. To make this determination, we find that both the structural and auxiliary design features must be considered. This construction comports with Customs' interpretations and the CIT's analysis; and it is equally consistent with the common and popular meaning of the terms.

*B. Proper classification.*

■■■ While the meaning of a classification term is a question of law, the issue of whether merchandise comes within the definition of a classification term is a question of fact subject to the clearly erroneous standard of review. *Simod America Corp. v. United*

---

**3.** Explanatory Notes are only instructive and are not dispositive or binding. *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed.Cir.1992) (quoting

H.R.Conf.Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582).

*States,* 872 F.2d 1572, 1576, 7 Fed.Cir. (T) 82, 86 (Fed.Cir.1989). Customs' classification of imported merchandise is presumed to be correct, 28 U.S.C. § 2639(a)(1) (1988), and the party challenging the classification has the burden of overcoming this presumption. *Id.* To overcome this presumption, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878, 2 Fed.Cir. (T) 70, 75 (Fed.Cir.1984). "Whether the court remands, conducts its own hearing, or simply examines the law and the tariff schedules on its own initiative, it is required to reach a *correct* result." *Id.* "[T]he court's duty is to find the *correct* result...." *Id.* (emphasis in original).

■■■ If the Pathfinder satisfies the requirements of 8703 HTSUS, there is no need to discuss 8704 HTSUS because under the General Rules of Interpretation (GRI) when an article satisfies the requirement of two provisions, it will be classified under the heading giving a more specific description, here 8703 HTSUS. GRI 3(a). Conversely, if the Pathfinder does not fall within 8703 HTSUS, it falls into 8704 HTSUS.

The CIT conducted a three week trial *de novo,* pursuant to 28 U.S.C. § 2640, to determine whether the Pathfinder was principally designed for the transport of persons or goods. The CIT looked at both design intent and execution, evaluating both structural and auxiliary design features. The CIT limited evidence to the vehicle models in the entries currently under consideration with the exception of evidence that was provided for comparison with vehicles that were readily accepted as trucks or passenger cars. These included the Nissan Hardbody truck and the Nissan Maxima sedan.[4]

It is evident that the CIT carefully applied the proper standards in making its decision. In reaching its conclusion, the CIT evaluated the marketing and engineering design goals (consumer demands, off the line parts availability, etc.), the structural design necessary to meet both cargo and passenger carrying requirements for both on- and off-road use, as well as interior passenger amenities.

The CIT also recognized that the Pathfinder was basically derived from Nissan's Hardbody truck line yet, the Pathfinder was based upon totally different design concepts than a truck. The CIT correctly pointed out these differences and more importantly, the reasons behind the design decisions, including the need for speed and economy in manufacturing to capture the changing market, a market into which Nissan was a late entrant. Specifically, the designers decided to adopt the Hardbody's frame side rails and the cab portion from the front bumper to the frame just behind the driver's seats so that they could quickly and economically reach the market. The front suspension system was also adopted from Nissan's truck line but the rear suspension was not. The fact that a vehicle is derived in-part from a truck or from a sedan is not, without more, determinative of its intended principal design objectives which were passenger transport and off-road capability.

Substantial structural changes were necessary to meet the design criterion of transporting passengers. The addition of the rear passenger seat required that the gas tank be moved to the rear and the spare tire relocated. This effectively reduces the cargo carrying capacity. Of particular importance was the design of a new rear suspension that was developed specifically to provide a smooth ride for passengers. New and different cross beams, not present on the Hardbody frame, were added to the Pathfinder's frame to accommodate the above changes.

Other design aspects that point to a principal design for passengers include: the spare tire and the rear seat when folded down intrude upon the cargo space; the cargo area is carpeted; a separate window opening in the pop-up tailgate accommodates passengers loading and unloading small packages without having to lower the tailgate. In contrast, the Hardbody truck bed can accommodate loading with a fork lift, clearly a design feature for cargo. The CIT also

---

4. The CIT noted that there was not a Nissan station wagon available for comparison and consequently saw little use in comparing the Pathfinder to a sedan.

found that the cargo volume is greatly reduced when the rear seat is up to accommodate passengers. Moreover, the axle and wheel differences are minor and consistent with the Pathfinder's off-road mission, particularly in the loaded condition.[5] The Pathfinder has the same engine size as the Maxima passenger car.

Auxiliary design aspects, in addition to those merely relating to the structural derivation of the Pathfinder, that indicate passenger use over cargo use include: vehicle height was lowered 50 millimeters; the seat slides were improved yet similar to those on two door passenger sedans. Other auxiliary design features that point to transport of passengers include: rear seats that recline, are comfortable, and fold to make a fairly flat cargo bed but are not removable; rear seat stereo outlets, ashtrays, cubbyholes, arm rests, handholds, footwells, seat belts, child seat tie down hooks and operable windows. The CIT noted that there is not much more that can be done to accommodate passengers in the rear seat. Moreover, the testimony of the three primary design engineers as well as the contemporaneous design development documents support the finding that the Pathfinder was principally designed for the transport of persons.

██ The non-tariff regulations (NHTSA and EPA regulations) are not dispositive for purposes of tariff classification. *See International Spring Mfg. v. United States*, 85 Cust. Ct. 5, 8, C.D. 4862, 496 F.Supp. 279, 282 (1980), *aff'd* 68 CCPA 13, C.A.D. 1257, 641 F.2d 875 (1981). The government concedes this point. Nonetheless, the government goes on to argue that "the fact that safety, emission and fuel design changes required by those regulations are an element of the design process ... should afford greater import to Nissan's decisions of what features to incorporate under the ... regulatory schemes" and that these regulations are in accord with the motor vehicle industry. As noted by the CIT, the government's assessment that these regulatory schemes contain language that is substantially the same as the statutory language in the HTSUS, therefore affording these regulations greater relevance, is misplaced. The reasoning is baseless because those regulations include a category for Multipurpose Passenger Vehicles (MPV), a category that is not specifically delineated in the HTSUS.

In its March 1, 1989, memorandum referred to above, Customs has drawn what appears to be a line between two door and four door versions of sports utility vehicles. Customs' conclusion, however, that vehicles that lack rear side passenger access doors are to be classified under 8704, is *de facto* affording determinative weight to this feature. This line, classifying two door dual-purpose vehicles for the transport of goods while classifying the four door version as principally designed for transport of persons, appears to be arbitrary.

Passenger cars with two doors also have restricted entry into the rear seat but this fact does not take these vehicles out of 8703 classification. Two door passenger cars are equipped with a seat slide mechanism that effectively slides the front seat forward to provide easier access to the rear seat. The doors of two door passenger cars are generally wider as well. The CIT found that the Pathfinder has both of these features so that passengers can be easily accommodated. Therefore, the two door Pathfinder accommodates passengers in the rear seat as well as two door passenger cars, if not as easily as four door sports utility vehicles. Consequently, the number of doors on a vehicle should not be determinative.

## CONCLUSION

We hold that the court applied the correct legal standards, and that the evidence of

---

5. In its March 1, 1989, memorandum Customs stated: **[Bl.Br. B–7]**
 ... [T]he heading 8703 does not exclude multipurpose vehicles solely because they have been designed to meet the rigorous requirements of cargo transport. It would be insufficient to consider only those design features that enable a vehicle to carry loads that are large or heavy relative to vehicle size. Other design features are also relevant because they enable a given vehicle to carry passengers, they enhance its suitability for that purpose, and they may, in some cases, reveal the purpose for which the vehicle was principally designed. March 1, 1989 memorandum.

record supports the CIT's decision that the Pathfinder is principally designed for the transport of persons.

Accordingly, we affirm the decision of the Court of International Trade in holding that the Pathfinder vehicle at issue is correctly classified under 8703.23.00 of the Harmonized Treaty System (US).

**AFFIRMED.**