**BAUSCH & LOMB, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 97–16.
Court No. 93–01–00028.

United States Court of International Trade.

Feb. 5, 1997.

McKenna & Cuneo (Michael K. Tomenga), Washington, DC, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara Silver Williams), New York City, for Defendant.

## OPINION

MUSGRAVE, Judge.

Plaintiff Bausch & Lomb, Inc. ("B & L") brings this action to contest the tariff classification by the United States Customs Service ("Customs") of electric toothbrushes and toothbrush heads imported by B & L. Defendant Customs liquidated the entries as "Other appliances" under Subheading 8509.80.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") and B & L filed a timely protest which Customs denied. B & L claims that its entries of electric toothbrushes are properly classified as "Toothbrushes" under Subheading 9603.21.00 of the HTSUS. Both parties have stipulated to the material facts and have filed motions for

summary judgment pursuant to CIT R. 56. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) and holds that Customs correctly classified the electric toothbrushes under Subheading 8509.80.00 of the HTSUS.

### Background and Standard of Review

The merchandise is a battery-operated electric toothbrush sold under the trademark "Interplak." B & L imported eight different models of the Interplak under the entries in this case. The Interplak usually consists of three basic elements: (1) one to four interchangeable plastic toothbrush heads; (2) a detachable plastic handle containing a battery-operated motor and a compartment for two rechargeable batteries; and (3) a stand that incorporates a battery recharger. B & L imported the toothbrushes from Hong Kong through the port of Atlanta between January 8, 1991, and August 12, 1992. B & L currently imports the Interplak under the newly created Subheading 8509.80.0045 for electric toothbrushes. The current imports are identical in all material respects to the merchandise at issue. Both parties have moved for summary judgment. Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." CIT R. 56. Since the parties have stipulated to all of the material facts, the Court has the power to render summary judgment.

Before launching into a discussion of the issues at hand, the Court finds it appropriate to review the historical characterization of classification decisions and suggest an avenue for conceptual reform. A long line of decisions from the United States Court of Appeals for the Federal Circuit ("CAFC") has characterized classification determinations as a "two-step" process with a legal and a factual component.[1] This characterization raises a logical and practical dilemma for deciding classification cases on summary judgment: the determination of whether the merchandise fits within the tariff provision is characterized as a factual issue; however, whether the merchandise fits within the tariff provision is equivalent to the ultimate issue in a classification case. Put another way, what party seeking summary judgment would stipulate to its adversary's "factual" determination that the merchandise fits within a particular tariff provision? To do so would be to stipulate oneself out of court. Strictly embracing the characterization would entail that the parties would never stipulate to a crucial material fact and the Court would be logically prevented from rendering summary judgment.

The "two-step" process originated from a classification case involving "prosthetic socks", where the court ruled that:

> The first question we must address is whether the merchandise is a prosthesis, and our immediate task is to determine the meaning of prosthesis. This is a question of law.

*Daw Industries, Inc. v. United States,* 1 Fed. Cir. (T) 146, 147, 714 F.2d 1140, 1141 (1983). Once the court determined the correct meaning of "prosthesis", the second step involved examining whether the prosthetic sock fit into the proper definition. As the court ruled:

> Whether particular items fit the definition of prosthesis adopted above is a question of fact. Therefore, the trial court's finding that the sheaths and socks are not prostheses will be reversed on appeal only if that finding is clearly erroneous.

*Id.* at 148, 714 F.2d at 1142. The court in *Daw Industries* portrayed the factual issue arising in every classification case as whether

1. This line of decisions includes: *Intel Singapore Ltd. v. United States,* 14 Fed. Cir. (T) ——, 83 F.3d 1416 (1996); *Medline Industries, Inc. v. United States,* 13 Fed. Cir. (T) ——, 62 F.3d 1407 (1995); *Marubeni America Corp. v. United States,* 12 Fed. Cir. (T) ——, 35 F.3d 530 (1994); *Marcel Watch Co. v. United States,* 12 Fed. Cir. (T) ——, 11 F.3d 1054 (1993); *Lynteq, Inc. v. United States,* 10 Fed. Cir. (T) ——, 976 F.2d 693 (1992); *W.R. Filbin & Co., Inc. v. United States,* 9 Fed. Cir (T) 155, 945 F.2d 390 (1991); *Digital Equipment Corp. v. United States,* 8 Fed. Cir. (T) 5, 889 F.2d 267 (1989); *Simod America Corp. v. United States,* 7 Fed. Cir. (T) 82, 872 F.2d 1572 (1989); *Stewart–Warner Corp. v. United States,* 3 Fed. Cir. (T) 20, 748 F.2d 663 (1984); *Childcraft Education Corp. v. United States,* 2 Fed. Cir. (T) 121, 742 F.2d 1413 (1984); *Daw Industries, Inc. v. United States,* 1 Fed. Cir. (T) 146, 714 F.2d 1140 (1983).

the merchandise "fits" within the proper meaning of the tariff provision. Subsequent CAFC decisions have followed the "two-step" process outlined in *Daw Industries* and have embraced its characterization of the factual analysis in a classification case as a determination that involves the fitting of an item into the tariff schedule.[2]

However, the process of "fitting" subject merchandise within a tariff term entails more than simply a factual determination: it is equivalent to resolving the ultimate issue in a classification case. The purely factual component of a classification case consists of determining what the item is and how it functions. If the "factual" analysis described in *Daw Industries* and its progeny is strictly applied, the parties will never stipulate to a crucial material fact because fitting the merchandise into the proper definition of the tariff term is at the heart of every classification case. If what functions as the ultimate issue in a classification case is characterized as a question of fact, then summary judgment could not be rendered because an issue of material fact remains in dispute.

Strictly applying the depiction of the "factual analysis" from *Daw Industries* would produce another unwanted result: classification determinations would be reviewable only under a "clearly erroneous" standard. Moreover, Customs' determinations of "whether particular items fit the definition of the tariff provision in question" would be presumed to be correct under 28 U.S.C. § 2639(a)(1)[3] because the determinations are putatively factual inquiries. *Goodman Mfg. v. United States*, 13 Fed. Cir. (T) ——, ——, 69 F.3d 505, 508 (1995) (the statutory presumption of correctness attaches only to an agency's factual determinations) The Court would thereby be prevented from finding the correct result in a classification case. Such a result would be at odds both with the Court's established duty to find the correct result[4] and with the Court's nondeferential review of classification cases.[5]

Of course, in *Daw Industries* the CAFC did not rule that Customs' ultimate classification determinations were presumed to be correct and subject to the "clearly erroneous" standard. The court implicitly fashioned a *third* step in asserting that its· "final task is to determine whether the original classification of the merchandise as wearing apparel was correct." *Id.* at 149, 714 F.2d at 1143. Subsequent cases have ruled that the "ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision is a question

---

2. *Marubeni America Corp. v. United States*, 12 Fed. Cir. (T) ——, ——, 35 F.3d 530, 534 (1994) ("Resolution of that issue [appropriate classification] entails a two step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. The first step is a question of law which we review *de novo* and the second is a question of fact which we review for clear error."); *accord Stewart–Warner Corp. v. United States*, 3 Fed. Cir. (T) 20, 22, 748 F.2d 663 (1984), *Childcraft Education Corp. v. United States*, 2 Fed. Cir. (T) 121, 122, 742 F.2d 1413, 1414 (1984).

3. 28 U.S.C. § 2639(a)(1) "Except as provided in paragraph (2) of this subsection, in any civil action commenced in the Court of International Trade under section 515, 516 or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision."

4. The duty of the Court to find the correct result in a classification case stems from both judicial

and legislative sources. "The trial court ... must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative.... [T]he court's duty is to find the correct result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984); "If the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision." 28 U.S.C § 2643(b).

5. The CAFC declared that "[o]ur agreement with the opinion of the CIT does not extend to the suggestion that a routine classification dispute is entitled to special deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)." *Crystal Clear Industries v. United States*, 13 Fed. Cir. (T) ——, ——, 44 F.3d 1001, 1003 n.* (1995).

of law subject to *de novo* review."[6] The Court can discern no logical or functional difference between determining whether merchandise fits within a tariff provision and determining the "ultimate" issue of whether the merchandise was classified under the appropriate subheading. One circumstance is eminently clear: if the question of whether the fit between merchandise and a tariff provision is a question of fact, it is surely a material fact to which the parties will not stipulate. It is due to this problematic situation that the Court now embarks on a proposal for conceptual reform.

The conceptual dilemma created by *Daw Industries* may be cured by revising the characterization of the issues. The purely factual inquiry in every classification case involves determining what the subject merchandise is and what it does. The purely legal question involves determining the meaning and scope of the tariff provisions. The ultimate mixed question becomes whether the merchandise has been classified under an appropriate tariff provision, or equivalently, whether the merchandise fits within the tariff provision. This ultimate issue involves both a legal and factual component: indeed the ultimate issue is an inseparable hybrid of the discrete factual and legal inquiries and is therefore a mixed question of law and fact reviewable *de novo*.

Although this Circuit has not previously characterized the ultimate classification issue as a mixed question of law and fact, the parallels between the ultimate classification issue and mixed questions decided by the CAFC, the Supreme Court, and federal appellate courts are compelling. In *Campbell v. Merit Systems Protection Bd.*, 14 Fed. Cir. (T) ——, 27 F.3d 1560 (1994), the CAFC reviewed an agency determination that an individual was not an "independent candidate" for purposes of a regulatory exception to the Hatch Political Activities Act. The CAFC explained that "this case reveals the falseness of the fact-law dichotomy, since the determination at issue, involving as it does

the application of a general legal standard to particular facts, is probably most realistically described as neither of fact nor law, but mixed." *Id.* at ——, 27 F.3d at 1565. Whether particular merchandise fits within the ordinary meaning of a tariff subheading is likewise a mixed question.

In analyzing the issue of discriminatory intent, the Supreme Court labeled it a mixed question of law and fact and defined mixed questions of law and fact as

> questions in which the historical facts are admitted or established, the rule of law is [resolved], and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.

*Pullman-Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982). This definition of a mixed question also aptly describes the ultimate issue involved in classification cases. In a classification case the "historical facts" are admitted or established, the Court determines the meaning and scope of the statutory tariff provisions, and the ultimate issue becomes whether the facts satisfy or fit the statutory standard.

The Supreme Court has reviewed other issues it has characterized as mixed questions of law and fact which are comparable to the ultimate classification issue. In reviewing the materiality of facts omitted from a corporate proxy statement, the Court reasoned that

> [t]he issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts. In considering whether summary judgment on the issue is appropriate, we must bear in mind that the underlying objective facts, which will often be free from dispute, are merely the starting point for the ultimate determination of materiality.

**6.** *Intel Singapore, Ltd. v. United States*, 14 Fed. Cir. (T) ——, ——, 83 F.3d 1416, 1417 (1996); *accord Marubeni America Corp. v. United States*, 12 Fed. Cir. (T) ——, ——, 35 F.3d 530, 533 (1994), *Marcel Watch Co. v. United States*, 12

Fed. Cir. (T) ——, ——, 11 F.3d 1054, 1056 (1993), *Lynteq, Inc. v. United States*, 10 Fed. Cir. (T) ——, ——, 976 F.2d 693, 696 (1992), *W.R. Filbin & Co., Inc. v. United States*, 9 Fed. Cir. (T) 155, 157, 945 F.2d 390, 392 (1991).

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2132–33, 48 L.Ed.2d 757 (1976). The "underlying objective facts" involved in the materiality context directly correspond to the discretely factual element of a classification case. As *TSC Industries* makes clear, these facts are simply the starting point for resolving the ultimate issue of materiality. The purely legal aspect of the materiality question involved defining the "reasonable investor". The ultimate issue of materiality is a mixed question of law and fact that involved determining whether a reasonable investor would rely on the facts in making investment decisions. Like materiality, the ultimate issue in a classification case may be characterized as a mixed question of law and fact because it involves the application of a legal standard, *i.e.*, a tariff subheading, to a particular set of facts, *i.e.*, the item properly described.

The Supreme Court has found that the ultimate determination of "in custody" for purposes of *Miranda* warnings is also properly characterized as a mixed question of law and fact:

> Two discrete inquiries are essential to the determination [of "in custody"]: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.... The first inquiry, all agree, is distinctly factual.... The second inquiry, however, calls for the application of the controlling legal standard to the historical facts. This ultimate determination, we hold, presents a "mixed question of law and fact" qualifying for independent review.

*Thompson v. Keohane*, —— U.S. ——, ——, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995). Much like a classification case, "in custody" determinations begin with an inquiry of the historical facts. The implicit legal finding involves the proper definition of a reasonable person. The ultimate issue (which the Court in this case depicted as the second inquiry) involves the application of the legal standard to the historical facts. This ultimate issue is comparable to the fitting of an item into a tariff subheading. Similar to the mixed questions as characterized by the Supreme Court, the ultimate issue in classification case may be described as a mixed question of law and fact due to the interconnected nature of its factual and legal elements.

The proposed conceptual reform in characterizing classification issues is entirely consistent with the three prong review that the CAFC has deemed appropriate in connection with classification decisions. The Court of International Trade ("CIT") continues to afford Customs' factual determinations a presumption of correctness and scrutinizes *de novo* Customs' legal interpretation of the meaning of the tariff provisions. Pursuant to its duty to find the correct result, the CIT reviews Customs' classification decision on the ultimate mixed question under the *de novo* standard. Consistent with its well established rulings, the CAFC continues to review factual findings of the CIT under the clearly erroneous standard, the legal findings of the CIT regarding the meaning of the tariff provisions under the *de novo* standard, and the ultimate classification determination by the CIT under the *de novo* standard. This proposed reform would make explicit the third distinct step undertaken by the courts in reviewing classification decisions. Recharacterizing the issues in a classification case would entail no change in standard of review jurisprudence.

Mixed questions of law and fact are frequently subjected to *de novo* review. The Supreme Court has found that mixed questions of law and fact that deal with constitutional principles should be reviewed *de novo*. The Supreme Court ruled that Fourth Amendment probable cause determinations, which are mixed questions of law and fact, are reviewed *de novo* due to the Court's role in controlling and clarifying legal principles. *Ornelas v. United States*, —— U.S. ——, ——, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996). Similarly, the Supreme Court ruled that *de novo* review is necessary where *habeas corpus* determinations are involved:

> Where the ascertainment of the historical facts does not dispose of the claim but calls for the interpretation of the legal significance of such facts, ... the District Judge must exercise his own judgment on this

blend of facts and their legal values. Thus, so-called mixed questions or the application of constitutional principles to the facts as found leave the duty of adjudication with the federal judge.

*Daniels v. Allen,* 344 U.S. 443, 507, 73 S.Ct. 437, 446, 97 L.Ed. 469 (1953) (citation omitted). Much like *habeas corpus* issues, classification cases ultimately call for the interpretation of the legal significance of the facts presented. The final step in a classification case consists of interpreting which tariff subheading best comprises the subject merchandise properly defined.

Federal appellate courts have also reviewed mixed questions of law and fact. The Fifth Circuit has ruled that determinations of claims of ineffective assistance of counsel "are mixed questions of law and fact and, thus, also subject to *de novo* review." *United States v. Faubion,* 19 F.3d 226, 228 (5th Cir.1994). Similarly, the Third Circuit found that

> determinations on mixed questions of law and fact or on purely legal issues are not subject to the presumption [of correctness].... When reviewing conclusions reached by a state court on mixed or legal issues, a federal habeas tribunal's standard of review is plenary.... The statutory presumption of correctness does attach, however, to the subsidiary findings of historical fact that are relevant to the resolution of mixed questions and questions of law.

*Ahmad v. Redman,* 782 F.2d 409, 412 (3rd Cir.1986) (citation omitted). The Ninth Circuit drew from the Supreme Court's language in *Pullman–Standard* to fashion a formula that consists of "three distinct steps in deciding a mixed fact-law question." *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.1984). As described by the court, the first step is a factual determination involving the "establishment of the 'basic, primary, or historical facts....'" *Id.* The second step is the legal issue concerning the "selection of the applicable rule of law." *Id.* The third step "is the application of law to fact or, in other words, the determination of 'whether the rule of law as applied to the established facts is or is not violated.'" *Id.*

The *McConney* court then outlined the appropriate standard of review for each of the three steps in deciding a question of mixed law and fact based on "the policy concerns that properly underlie standard of review jurisprudence generally." *Id.* at 1201. Questions of fact or the establishment of historical facts are reviewed under the "deferential, clearly erroneous standard." *Id.* at 1200. As the court pointed out, appellate courts review findings of fact under the "clearly erroneous" standard because of two policy objectives.

> First, it minimizes the risk of judicial error by assigning primary responsibility for resolving factual disputes to the court in the "superior position" to evaluate and weigh the evidence—the trial court.... Second, because under the clearly erroneous test, the reviewing court will affirm the trial court's determinations unless it "is left with the definite and firm conviction that a mistake has been committed" ... [the appellate court] is relieved of the burden of a full-scale independent review and evaluation of the evidence. Consequently, valuable appellate resources are conserved for those issues that appellate courts in turn are best situated to decide.

*Id.* at 1201. The court also ruled that questions of law are "reviewed under the nondeferential, *de novo* standard." *Id.* at 1201. The court cited policy goals that called for *de novo* review of legal questions. First, appellate courts do not spend time hearing and weighing evidence. Second, the court stated that "[u]nder the doctrine of *stare decisis,* appellate rulings of law become controlling precedent and, consequently, affect the rights of future litigants." *Id.* at 1201. The court reasoned that the standard of review applicable to a specific mixed question of law and fact hinges on the nature of the question itself:

> The appropriate standard of review for a district judge's application of law to fact may be determined, in our view, by reference to the sound principles which underlie the settled rules of appellate review just discussed. If the concerns of judicial administration—efficiency, accuracy, and precedential weight—make it more appro-

priate for a district judge to determine whether the established facts fall within the relevant legal definition, we should subject his determination to deferential, clearly erroneous review. If, on the other hand, the concerns of judicial administration favor the appellate court, we should subject the district judge's finding to *de novo* review.

*Id.* at 1202. In classification cases, the consideration of comparative institutional advantage and the concern for consistency in the administration of customs laws make it appropriate for the CIT to review Customs' determinations and for the CAFC to review the CIT's decisions under the *de novo* standard.

### *Discussion*

As a mixed question of law and fact, classification of the Interplak involves three steps. The first step is a factual inquiry requiring that the nature of the merchandise be determined. The parties have submitted affidavits, product descriptions, Explanatory Notes, tariff schedules, and legislative history. The parties have stipulated to the material fact that the subject merchandise is an electric toothbrush and to other material facts sufficient to allow for summary judgment.

The second step calls for ascertaining the correct definition and scope of the competing tariff provisions, which is a legal determination. As a starting point for ascertaining the meaning of a tariff provision, the Court looks to the language of the statute itself. *Pfaff American Sales Corp. v. United States,* 16 CIT 1073, 1076 (1992) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Customs liquidated the Interplak under HTSUS Subheading 8509.80.00 which provides:

8509   Electromechanical domestic appliances, with self-contained electric motor; parts thereof:

* * *

8509.80.00   Other appliances ...[duty rate of 4.2% *ad valorem*]

* * *

The plain language of Subheading 8503.80.00 covers domestic appliances with electric motors that are not specifically classifiable under another subheading. The question is whether electric toothbrushes are specifically classifiable under the tariff provision proposed by B & L.

B & L claims that the plain language of HTSUS Subheading 9603.21.00 includes electric toothbrushes. The relevant provisions provide:

9603   Brooms, brushes (including brushes constituting parts of machines, appliances or vehicles) ...

* * *

Toothbrushes ... for use on the person, including such brushes constituting parts of appliances:

9603.21.00   Toothbrushes ... [duty rate of 0.2¢ each plus 3.4% *ad valorem*]

* * *

The plain language of Subheading 9603.21.00 does not clinch the case for B & L, however. The phrase "including such brushes constituting parts of appliances" suggests that the HTSUS distinguishes an appliance that contains a toothbrush from a toothbrush that is imported separately from the appliance.

B & L points to General Rule of Interpretation 3(a) of the Harmonized Tariff System, which states that the heading with the more specific *eo nomine* description of an article is preferred to one containing a more general description. B & L argues that the *eo nomine* description "brush" in Heading 9603 is more specific than the Heading 8509 description "electromechanical domestic appliance with self-contained motor." As defendant points out, if that rule were controlling it would provide an unacceptable result in this case: "any imported product which included a brush, such as a streetsweeper, would be classified as a brush, rather than, as it is properly, as [a] mechanical apparatus." Def.'s Mem. Supp. Cross–Mot. Summ. J. at 6. The Court agrees with defendant that B & L's interpretation would provide this unacceptable result. The Court finds that Heading 9603 only includes brush elements imported separately from the overall appliance and therefore Subheading 9603.21.00 only in-

cludes separately imported toothbrush elements.

Customs argues that legislative history demonstrates that the Interplak is correctly classified under Subheading 8509.80.00. "It is well settled that tariff acts must be construed to carry out the intent of the legislature." *Rico Import Co. v. U.S.*, 16 CIT 770, 773, 797 F.Supp. 1028, 1030 (1992) (citing *Nippon Kogaku (USA), Inc. v. United States,* 69 C.C.P.A. 89, 92, 673 F.2d 380, 382 (1982)). The intent of the legislature is manifested in Congress's endorsement of the Customs Cooperation Council's ("CCC") Explanatory Notes, and the Explanatory Notes under Subheading 8509 included the precise merchandise at issue: "(B)(7) Electric tooth brushes". Although the Explanatory Notes are not dispositive or binding on the Court, they "offer guidance in interpreting [HTSUS] subheadings." *Mita Copystar Amer. v. United States,* 14 Fed. Cir. (T) ——, ——, 21 F.3d 1079, 1082 (1994). As the Joint Committee on the Omnibus Trade and Competitiveness Act of 1988 stated:

> The Explanatory Notes constitute the Customs Cooperation Council's official interpretation of the Harmonized System. They provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system ... [and are] generally indicative of proper interpretation of the various provisions of the Convention....

H.R. Conf. Rep. No. 100–576, at 549 (1988), *reprinted in* 1988 U.S.C.C.A.N 1547, 1582. The Court finds that the Explanatory Notes are persuasive because they expressly include electric toothbrushes under Heading 8509. In addition, the Explanatory Notes regarding Heading 8509 predate both the adoption of the HTS system by the United States as well as Customs' liquidation of the Interplak at issue here.

The newly enacted HTSUS Subheading 8509.80.0045 for "electric toothbrushes" also lends favor to the defendant's interpretation of the tariff provision. Congress placed electric toothbrushes within HTSUS Heading 8509, the same heading under which Customs liquidated the subject merchandise, and not under Subheading 9603.21.00 as proposed by B & L. B & L concedes that the current imports of the Interplak are correctly classified under the new Subheading 8509.80.0045 and that the "current imports are identical in all material respects to the merchandise at issue in this action." Pl.'s Br. Supp. Mot. Summ. J. at 5.

The Court concludes its purely legal inquiry by ruling that based on Congressional intent, the unacceptable implications of B & L's proposed interpretation of the tariff schedule, and the recent Congressional action expressly placing electric toothbrushes under Heading 8509, HTSUS Subheading 8509.00.00 included electric toothbrushes at the time the subject merchandise was imported. With regard to the ultimate mixed question, the Court holds that Customs correctly classified the Interplak under HTSUS item 8509.00.00.

B & L argues that previous court decisions support its interpretation. Electric toothbrushes were classifiable under the general provision for toothbrushes contained in paragraph 1506 of the Tariff Act of 1930. *Kaysons Import Corp. v. United States,* 56 Cust. Ct. 146, C.D. 2622 (1966). Paragraph 1506 read:

> 1506    Tooth brushes, whether or not the handles or backs thereof are composed wholly or in chief value of any product provided for in paragraph 31....

However, *Kaysons Import Corp.* is readily distinguished because the language contained in that tariff paragraph is substantially different from HTSUS Subheading 9603.21.00. Unlike Subheading 9603.21.00, paragraph 1506 does not include the specific language "constituting parts of appliances." "A change in the language of a statute is generally construed to import a change in meaning...." Ruth F. Sturm, *Customs Law and Administration* § 51.7 at 57 (1995). Unlike the language of paragraph 1506, the different language of Subheading 9603.21.00 suggests that the brush element covered thereunder is merely a separately imported component of a machine or appliance.

The Court also found that electric toothbrushes were correctly classified under the *eo nomine* toothbrush provision set forth in TSUS item 750.40, "Tooth brushes". *E. R.*

*Squibb & Sons, Inc. v. United States,* 65 C.C.P.A. 61, 576 F.2d 921, C.A.D. 1207, 65 C.C.P.A. 61, 576 F.2d 921 (1978). Clear Congressional action removed any doubt that electric toothbrushes should be classified under item 750.40. *E. R. Squibb & Sons* reasoned:

In the Report of the Senate Committee on Finance to accompany the Tariff Schedules Technical Amendments Act, S.Rep. No. 530, 89th Cong., 1st Sess. 33 (1965), the amendment to headnote 1(i) ... was described, in pertinent part, as follows:

Section 79. Electric toothbrushes. This section ensures that electric toothbrushes and other mechanical combs and brushes which are toilet articles will be classified as toilet articles.

U.S.C.C.A.N.1965, pp. 3416, 3448.

*E. R. Squibb & Sons,* at 66, 576 F.2d at 925. Except for the Explanatory Note that counsels the Court to find for the defendant in this case, Congressional intent specifically regarding electric toothbrushes is conspicuously lacking in connection with the entries in question here. The Court acknowledges the doctrine that "unless a contrary intent appears, the legislature is presumed to have approved of the judicial construction of a tariff provision when the provision is reenacted in the same or substantially the same language." Ruth F. Sturm, *Customs Law and Administration* § 52.3 at 23 (1995). However, the language of Subheading 9603.21.00 is substantially different from item 750.40; Subheading 9603.21.00 includes language suggesting that it only covers brush elements imported separately from the overall machine or appliance. The precedents cited by B & L therefore do not control the case.

### Conclusion

The parties stipulated that the Interplak merchandise was an electric toothbrush. The Court rules that electric toothbrushes are covered by HTSUS Subheading 8509.80.00, "Other appliances", and not by HTSUS Subheading 9603.21.00, the *eo nomine* provision for toothbrushes. The Court holds that Customs correctly classified the Interplak electric toothbrushes under HTSUS Subheading 8509.80.00.