Slip Op. 99-37

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| BAUER INDUSTRIES LIMITED, | : | |
| | : | |
| Plaintiff, | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| v. | : | |
| | : | Court No. 93-03-00185 |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

[Plaintiff's Cross Motion for Summary Judgment granted.  Defendant's Motion for Summary Judgment denied.]

Decided: April 23, 1999

*Edmund Maciorowski, P.C.* (*Edmund Maciorowski*), for plaintiff.

*David W. Ogden*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Mikki Graves Walser*); of counsel: *Beth C. Brotman*, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service,  for defendant.

## OPINION

This is a classification case before the Court on cross motions for summary judgment by Bauer Industries Ltd. ("Bauer") and the U.S. Customs Service ("Customs").  This case presents the sole question of whether the processes used in the manufacture of plaintiff's import product are bonding processes or merely sizing and finishing processes.

## *Background*

The merchandise at issue is "needled automotive underlay," or synthetic padding designed as sound absorbing materials and heat insulators for automotive linings, primarily used as a floor covering in automobiles (hereinafter "underlay"). The underlay is produced by blending synthetic fibers based on the grade of the material and processing it through garnetts that set out the fibers in a parallel weave that creates a web formation. The web is laid across an apron that forms the web into broad patterns, and the apron then takes the web to a needle loom where it is needled and compressed. The web continues on to the next step where an emulsion of acrylic polymers, residual monomers and water is applied to the bottom surface of the web. After exiting this process, the web passes over a gas-fired hot roll that heats the web at approximately 400 degrees Fahrenheit, driving the chemicals into the fibers and the water in the emulsion out through the top of the web. This process spreads the polymer emulsion throughout the web and locks its fibers into place.

Both parties agree to this set of facts, but dispute its meaning. Bauer claimed a classification that describes the underlay manufacture as a multistage process, with needling as the first, chemical bonding a second, and thermal treatment a third distinct and complementary process. Customs disagreed and denied Bauer's claimed classification, asserting instead that the polymer emulsion is only applied to the bottom of the web, does not penetrate the entire web, and cannot be said to be a bonding but rather only a finishing process.

## *Standard of Review*

Decisions of the Customs Service are presumed to be correct, 28 U.S.C. § 2639(a)(1) (1994), but the presumption of correctness applies solely to factual questions and it is the duty of this Court

to find the correct result.[1]  The classification decision entails a three-step process including a factual

and a legal inquiry, and an ultimate mixed question involving both factual and legal components.

The factual inquiry is subject to the "clearly erroneous" standard while the purely legal and ultimate

mixed questions are reviewed *de novo*.  *Bausch & Lomb, Inc. v. United States*, 21 CIT __, __, 957

F. Supp. 281, 284 (1997).

Both parties have moved for summary judgment.  Summary judgment is appropriate if "there

is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a

matter of law."  CIT R. 56(d); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91

L.Ed.2d 202 (1986).  "The party opposing summary judgment may not rest on its pleadings, but must

respond with specific facts showing the existence of a genuine issue for trial."  *Pfaff American Sales

Corp. v. United States*, 16 CIT 1073, 1075 (1992) (citations omitted).

### *Discussion*

Customs asserts that the needling at the beginning of the web-treatment process is the

primary, if not only, form of bonding that holds the web together.  Customs claims that the  underlay

should be deemed a "needleloomed felt" under HTSUS 5602.10.90 (1994), the heading under which

Customs has classified Bauer's merchandise.

Bauer, on the other hand, asserts that needling is but one part of the bonding process, and that

---

[1] *See Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984) ("the court's duty is to find the correct result, by whatever procedure is best suited to the case at hand"), *Goodman Mfg., Inc. v. United States*, 13 Fed. Cir. (T) __, __, 69 F.3d 505, 508 (1995) (the statutory presumption of correctness attaches only to an agency's factual determinations), *and Rollerblade, Inc. v. United States*, 15 Fed. Cir. (T) __, __, Ct. No. 96-1397 at 6 (1997) (legal issues are not afforded deference under 28 U.S.C. § 2639 or under the administrative deference standard set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).

the chemical treatment of the polymer emulsion to the web is a second and the gas-fired thermal

treatment a third distinct bonding step.  According to Bauer, the web form "has very little physical

integrity and is unable to withstand handling or processing after the needling alone."  Mem. In Supp.

Of Pl.'s Opp'n to Def.'s Mot. For Summ. J. at 4.  Bauer seeks a reliquidation of its merchandise

under the heading of HTSUS 5603.00.10 (1994) as a "nonwoven."

An examination of the competing HTSUS headings reveals that Bauer has claimed the more

specific classification.  Customs' claimed heading reads:

> 5602.10.90:
>
> Felt, whether or not impregnated, coated, covered or laminated:
>      Needleloom felt and stitch-bonded fiber fabrics:    Other

HTSUS 5602.10.90 (1994).  Bauer's claimed heading however identifies the precise product at issue

in this case:

> 5603.00.10:
>
> Nonwovens, whether or not impregnated, coated, covered or laminated:
>      Floor covering underlays.

HTSUS 5603.00.10 (1994).  The product at issue, described at length above, is a needled automotive

underlay chiefly used as a floor covering.  Bauer's claimed classification clearly satisfies both the

*eo nomine* and use designations of the product in this case.  *See United States v. Paul M. W.*

*Bruckmann*, 65 CCPA 90, 582 F.2d 622 (1978); *Group Italgass U.S.A., Inc. v. United States*, 17 CIT

226 (1993).  Thus, in accordance with the General Rules of Interpretation 3(a), Bauer's designation

is the preferred classification.  Bauer must prove the use of its product to earn this classification;

however, the testimony of so few as one expert is sufficient. *Advance Solvents & Chemicals Corp. v. United States*, 34 CCPA 148 (1947); *United States v. S.S. Perry*, 25 CCPA 282 (1938).

Bauer submitted in support of its position the affidavit of an outside expert, Dr. Edward A. Vaughn, who authored a textbook setting forth the manufacturing standards for the nonwoven products industry.[2] Dr. Vaughn attests to the industry guidelines for the manufacture of automotive underlay as well as the chemical effects of a treatment such as the one Bauer used in production of the underlay. According to Dr. Vaughn, a needleloomed felt requires a needle punching operation that causes between 600 and 3,000 penetrations per square inch of fabric; but the needling in Bauer's first bonding process involves penetrations of no more than 140 per square inch. Vaughn Affidavit at ¶ 10. Dr. Vaughn, a Professor of Polymer Science at Clemson University and specialist in nonwoven fabric manufacturing technology, examined the underlay and concluded that the chemical and thermal treatments applied to it after needling "activate[] chemical cross linkages . . . which provide fiber encapsulation . . . resulting in fiber to fiber bonding [and which] imports dimensional stability to the web." Vaughn Affidavit at ¶ 11. Dr. Vaughn also takes issue with Customs' interpretation of the process, stating that chemical and thermal treatments are "inconsistent with a 'finish coating' as that terminology is understood in the textile field." Vaughn Affidavit at ¶ 12. His conclusion is that Bauer's manufacturing process "combines three complimentary [*sic*] nonwoven web consolidation (bonding) technologies to interlock the fibers of the nonwoven fabric . . . (1) needle tacking; (2) chemical bonding via latex [polymers]; and, (3) thermal bonding via low melt fibers." Vaughn Affidavit at ¶ 14.

---

[2] Dr. Edward A. Vaughn, *Nonwoven Fabric Primer and Reference Sampler* (3rd ed. 1992). It is significant that Customs itself cites from this work for the definitions of terms that are common to the nonwoven fabrics industry.

Customs does not refute the testimony of Dr. Vaughn[3] except to say that "plaintiff's affiant does not have personal knowledge of the facts pertaining to the manufacturing process of the merchandise which is the subject of this action." Def.'s Resp. to Pl.'s Statement of Material Facts at ¶ 9 and *passim*. Customs alleges that Dr. Vaughn examined an underlay which was made in the United States, while the underlay in this action was produced in Canada, and that Dr. Vaughn's examination was of a product made six years after the production of the underlay in this action. Def.'s Resp. In Opp'n to Pl.'s Cross-Mot. For Summ. J. at 5. Customs implies that the samples tested by itself and Dr. Vaughn resulted from different manufacturing processes and therefore Dr. Vaughn's affidavit is irrelevant.

To resolve this issue, the Court requested and Bauer provided detailed information regarding the manufacturing processes used to produce the underlays examined by Customs, Dr. Vaughn, and those currently before the Court. In Plaintiff's Supplemental Information, Bauer established not only the fact that the manufacturing processes are identical for all samples examined by all parties, but also identified the chain of custody between the samples and the examining parties. Customs did not respond to or refute Bauer's Supplemental Information. The Court rejects Customs' attempt to create a genuine issue of fact and is satisfied that the processes are identical.

In the absence of a genuine issue of fact, the Court finds that summary judgment is appropriate. Bauer's expert is authoritative and persuasive that there are distinct, complementary bonding processes at work on the underlay in this case. The Court agrees that the underlay is not

---

[3] At oral argument, Customs stipulated to the credibility and veracity of Dr. Vaughn and his affidavit. Customs further stipulated that there were no issues of genuine fact other than the identity of the underlay samples examined by itself and by Bauer's expert, discussed *infra*.

suitable for its intended use after only the needling stage, and that the chemical and thermal stages

are bonding processes without which the underlay could not form.  The Court concludes that Bauer's

submitted affidavits and supplemental information overcome Customs' presumption of correctness,

and Bauer's uncontested evidence demonstrates eligibility for its claimed classification.

## *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment is denied and plaintiff's

motion for summary judgment is granted.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: April 23, 1999
           New York, NY