**Slip Op. 04-102**

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                       :
MOTOROLA, INC.,                        :
                                       :
            Plaintiff,                 :
                                       :
      v.                               :     Court No.
                                       :     01-00126
UNITED STATES,                         :
                                       :
            Defendant.                 :
                                       :
_____:

Plaintiff, Motorola, Inc., moves pursuant to USCIT R. 56 for summary judgment on the ground that there is no genuine issue as to any material facts. Defendant cross-moves for summary judgment seeking an order dismissing the case.

**Held**: Plaintiffs' motion for summary judgment granted in part and denied in part. Defendant's cross-motion for summary judgment granted in part and denied in part.

August 13, 2004

Katten Muchin Zavis Rosenman (Michael E. Roll, Kathleen M. Murphy, James L. Sawyer and John P. Smirnow) for Motorola, Inc., plaintiff.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Amy M. Rubin, Commercial Litigation Branch, Civil Division, United States Department of Justice; of counsel, Chi S. Choy, Office of the Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, for the United States, defendant.

## OPINION

**TSOUCALAS, Senior Judge:** Plaintiff, Motorola, Inc. ("Motorola"), moves pursuant to USCIT R. 56 for summary judgment on the ground that there is no genuine issue as to any material facts.

Motorola contends that the merchandise at issue are classifiable as hybrid integrated circuits as a matter of law.  Defendant cross-moves for summary judgment seeking an order dismissing the case.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (2000).

## STANDARD OF REVIEW

On a motion for summary judgment, the Court must determine whether there are any genuine issues of fact that are material to the resolution of the action.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine if it might affect the outcome of the suit under the governing law.  See id. Accordingly, the Court may not decide or try factual issues upon a motion for summary judgment.  See Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988).  When genuine issues of material fact are not in dispute, summary judgment is appropriate if a moving party is entitled to judgment as a matter of law.  See USCIT R. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**DISCUSSION**

## I.   Background

The merchandise subject to this action ("subject merchandise") was entered through the port of Chicago between January and June of 1998.  See Compl. ¶ 2.  The subject merchandise are circuits used in cell phone battery packs for Motorola cell phones.  See Mem. Supp. Pl.'s Mot. Summ. J. ("Motorola's Mem.") at 3. The United States Customs Service[1] ("Customs") liquidated the subject merchandise under subheading 8536.30.80 of the United States Harmonized Tariff Schedule ("HTSUS") subject to a duty rate of 3.2 percent ad valorem.  See Compl. ¶ 22.  The subject merchandise are used in either nickel or lithium chemistry battery packs.  See Motorola's Mem. at 3.   Plaintiff filed a timely protest and application for further review with Customs challenging the classification of the subject merchandise under HTSUS 8536.30.80. See Compl. ¶ 4.  Customs issued Head Quarter Ruling ("HQ") 961050 on May 1, 2000, and found that the subject merchandise are classifiable under subheading 8536.30.80 of the HTSUS, as other electrical apparatus for protecting electrical circuits.  See Motorola's Mem. Ex. 4 at 6.  In reaching its decision, Customs noted that the subject merchandise are not classifiable under

---

[1]     The United States Customs service was renamed the Bureau of Customs and Border Protection of the Department of Homeland Security, effective March 1, 2003.  See H.R. Doc. No. 108-32 (2003).

subheading 8542.40.00 because Motorola's "flex circuits are not constructed with a film layer directly on the substrate and in the mass."[2]  See id. at 5.  On March 29, 2001, Customs denied Motorola's protest in full.  See  Compl. ¶ 5.

The HTSUS sections relevant to the Court's discussion are set forth below:

> 8536 Electrical apparatus for switching or protecting electrical circuits, or for making connections to or in electrical circuits (for example, switches, relays, fuses, surge suppressors, plugs, sockets, lamp-holders, junction boxes), for a voltage not exceeding 1,000 V (con.):
>
> . . . .
>
> 8536.30          Other apparatus for protecting electrical circuits:
>
> 8536.30.40          Motor overload protectors . . .3.2%
>
> 8536.30.80          Other . . . . . . . . . . . . . .3.2%
>
> . . . .
>
> 8542 Electrical integrated circuits and microassemblies; parts thereof:
>
> . . . .
>
> 8542.40.00     Hybrid integrated circuits . . . . . free

---

   [2]    A substrate is "the physical material on which a microcircuit is fabricated; used primarily for mechanical support and insulating purposes, as with ceramic, plastic, and glass substrates." McGraw-Hill Dictionary of Scientific and Technical Terms 2061 (6th ed. 2003).

**II.  Customs Properly Classified Subject Merchandise Under Heading 8536**

>     **A.    Contentions of the Parties**

>>          **1.    Motorola's Contentions**

Motorola contends that Customs improperly classified the subject merchandise under HTSUS heading 8536. See Motorola's Mem. at 28.  Specifically, Motorola argues that the subject merchandise should have been classified under heading 8542. See id. Under rule one of the General Rules of Interpretation ("GRI 1"), "classification is determined according to the terms of the headings and any relative section or chapter notes." Id. Motorola points out that "headings 8541 and 8542 shall take precedence over any other heading in the tariff schedule which might cover them by reference to, in particular, their function." Id. (quoting Harmonized Commodity Description and Coding System, Explanatory Note, 85.42 (3rd ed. 2002) ("Explanatory Note") at 1,700) (emphasis omitted).    Accordingly, "if the [subject merchandise] are classifiable in HTSUS heading 8542, they cannot be classified in heading 8536." Id.

Motorola contends that the subject merchandise are defined in Note 5 of the HTSUS as "electronic integrated circuits and microassemblies."  See id. at 29.  Motorola asserts that the Explanatory Note set out the following four elements for

classifying an article as a "hybrid integrated circuit": (1) an active element obtained by semiconductor technology; (2) a passive element obtained by thin or thick film technology; (3) a single insulating substrate; and (4) the active and passive elements must be indivisibly combined on the substrate. See id. (citing Explanatory Note at 1,700). Although Motorola concedes that the components theoretically can be removed from the substrate, Motorola maintains that it does not remove the components from the substrate once they are attached. See id. at 30. Customs' expert did not contradict evidence that Motorola intends for the elements to be permanently attached to the substrate. See id. at 30-31. Based on this intention, Motorola asserts that Customs "needs more than speculation or hypotheticals to create an issue of fact." Id. at 31.

Motorola also argues that Customs' HQ 916050 is not entitled to judicial deference because courts "retain an independent responsibility to decide the legal issue regarding the proper meaning and scope of tariff terms." Id. at 7. Motorola asserts that judicial deference is only appropriate "if a statute is ambiguous and Congress has left it to the agency to determine the meaning of the ambiguity." Pl.'s Opp'n Def.'s Cross-Mot. Summ. J. & Reply Def.'s Opp'n Pl.'s Mot. Summ. J. ("Motorola's Reply") at 1. Motorola argues that the plain language of the statutes at issue is

clear and unambiguous and, therefore, no judicial deference is warranted. See id. at 1-2. In addition, Motorola asserts that when classification rulings, such as HQ 916050, are at issue the Court "need only defer to them if it finds them persuasive." Motorola's Mem. at 8 (citing Skidmore v. Swift & Co., 323 U.S. 134 (1944)).

### 2. Customs' Contentions

Customs replies that the subject merchandise does not fall within the definition of hybrid integrated circuits and, therefore, was properly classified under heading 8536 of the HTSUS. See Def.'s Mem Sup. Cross-Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Customs' Mem.") at 13-22. The parties agree that the subject merchandise contain three of the four elements set forth in the definition of hybrid integrated circuits in Note 5(b)(ii) of Chapter 85. See id. at 16. The Explanatory Note provides that "indivisible" means that "though some of the elements could theoretically be removed and replaced, this would be a long and delicate task which would be uneconomical under normal manufacturing conditions." Id. at 18 (quoting Explanatory Note). Here, the evidence indicates that separating the elements from the substrate is economical and not a long and delicate task. See id. Accordingly, Customs maintains that classification under heading 8542 is not appropriate.

Customs additionally argues that to meet the definition of hybrid integrated circuits the subject merchandise must contain passive elements that are produced at the same time as the substrate. See id. Customs asserts that "[i]t is incontestable that none of the components on the [subject merchandise] in issue were produced at the same time as the substrate." Id. Rather, the substrate was purchased by Motorola from an unrelated supplier and then the components were soldered onto the substrate by Motorola. See id. at 18-19. Motorola's expert stated that elements on the subject merchandise were indivisibly combined on the substrate, even though commercially available machinery exists that could remove and replace defective components. See id. at 19. Motorola, however, discards defective subject merchandise because it is more economical than incurring the time and expense to fix such merchandise. See id. Customs contends that "[w]hile Motorola may have made a business decision not to remove and replace components that are found to be defective on these particular assemblies, that does not render them 'indivisibly combined' for purposes of tariff classification." Id. at 20. Customs maintains that the test for whether components are "indivisibly combined" is objective and "not subject to the whims of an individual importer or manufacturer." Id. The test for whether the indivisible element has been met "is whether removing and replacing elements on the circuit would be a long and delicate task that would render the procedure uneconomical

under normal manufacturing conditions." <u>Id.</u> at 21. Motorola did not establish that the procedure to replace defective components on the subject merchandise would be a long and delicate process. <u>See id.</u> Consequently, the subject merchandise do not satisfy the tariff definition of hybrid integrated circuits and were properly classified under heading 8536. <u>See id</u> at 21-22.

Customs also argues that HQ 961050 is entitled to <u>Skidmore</u> respect. <u>See id.</u> at 10-13. Customs' notes that Congress "dictated that, in an action in which an importer is challenging the denial of a protest on an issue such as [the one] raised here, Customs' decision is presumed to be correct." <u>Id.</u> at 12 (citing 28 U.S.C. § 2639(a)(1) (1994)). Customs argues that the Court should recognize Customs' expertise in administering and interpreting the tariff statute. <u>See id.</u> Based on its thorough and reasoned analysis, and the formality related to the issuing of its decision, Customs contends that HQ 961050 is entitled to <u>Skidmore</u> deference.

### B.   Analysis

#### 1.   Motion for Summary Judgment

Determining whether imported merchandise was classified under the appropriate tariff provision entails a two-step process. <u>See Sabritas, S.A. de C.V. v. United States</u>, 22 CIT 59, 61, 998 F. Supp 1123, 1126 (1998). First, the proper meaning of specific terms in

the tariff provision must be ascertained.  Second, whether the imported merchandise falls within the scope of such term, as properly construed, must be determined.  See Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1391 (Fed. Cir. 1994).  The first step is a question of law and the second is a question of fact. See id.; see also Universal Elecs., Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997).  Pursuant to 28 U.S.C. § 2639(a)(1), Customs' classification is presumed correct and the party challenging the classification bears the burden of proving otherwise.  See Universal Elecs., 112 F.3d at 491.  This presumption, however, applies only to Customs' factual findings, such as whether the subject merchandise falls within the scope of the tariff provision, and not to questions of law, such as Customs' interpretation of a particular tariff provision.  See Sabritas, 22 CIT at 61, 998 F. Supp. at 1126; see also Universal Elecs., 112 F.3d at 491; Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995).  When there are no material issues of fact in dispute, as is admitted by both parties in the present case, the statutory presumption of correctness is irrelevant.  Goodman Mfg., 69 F.3d at 508.

The ultimate question in every tariff classification is one of law: "whether the merchandise is properly classified under one or another classification heading."  Bausch & Lomb, Inc. v. United

States, 148 F.3d 1363, 1365 (Fed. Cir. 1998).  Where, as in the instant case, there is no disputed material issue of fact to be resolved by trial, disposition by summary judgment is appropriate. Pursuant to 28 U.S.C. § 2640(a) (1994), Customs' classification decision is subject to de novo review based upon the record before the Court.  Accordingly, the Court must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative."  Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

### 2.    **Skidmore Respect**

As a preliminary matter, the Court finds that HQ 961050 is entitled Skidmore respect.  In Skidmore, 323 U.S. at 140, the Supreme Court set forth the factors a reviewing court is to consider in determining how much weight an agency's decision is to be afforded.  The amount of respect a court affords an agency's decision "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking power to control."  Id.  A Customs classification ruling's power to persuade may vary depending on the Skidmore factors articulated in United States v. Mead, 533 U.S. 218 (2001).  See Structural Indus., Inc. v. United States, 356 F.3d 1366, 1370 (Fed. Cir. 2004).  Customs has

specialized experience which can aide the Court in its review of the questions at issue in this case.  See Mead, 533 U.S. at 234. Accordingly, Customs classification rulings are entitled to "a respect proportional to [their] 'power to persuade.'" Mead, 533 U.S. at 235 (quoting Skidmore, 323 U.S. at 140).

Motorola argues that deference is not warranted because the statutory language defining hybrid integrated circuits is plain and unambiguous.  See Motorola's Reply at 1-2.  The central issue, however, is the meaning of the indivisible requirement contained in the statutory definition of hybrid integrated circuit.  The Court has an "independent responsibility to decide the legal issue regarding the proper meaning and scope of the HTSUS terms."  Mead Corp. v. United States, 283 F.3d 1342, 1346 (Fed. Cir. 2002) (citing Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001)).  Here, Skidmore deference may be warranted if HQ 961050 contains "all those factors which give it the power to persuade, if lacking power to control."  Skidmore, 323 U.S. at 140. For the reasons set forth below, the Court finds that the thoroughness and valid reasoning of HQ 961050 is entitled Skidmore respect.

### 3.   Classification Under Heading 8536

Pursuant to GRI 1, the definition and scope of terms of a particular provision is to be determined by the wording of the

statute and any relevant section or chapter notes.  See Sabritas, 22 CIT at 62, 998 F. Supp. at 1126-27.  GRI 1 states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . ."  If a tariff term is not statutorily defined in the HTSUS and its intended meaning cannot be discerned from legislative history, then the definition is determined by ascertaining its common and commercial meaning.  See Lynteq, 976 F.2d at 697-98; see also Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994).  To ascertain a tariff term's common meaning, the Court may consult dictionaries and scientific authorities, as well as its own understanding of the term.  See Brookside Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1998), cert. denied, 488 U.S. 943 (1988).  The Court, in determining the definition of tariff terms, may also use the explanatory notes to the HTSUS, which provide guidance in interpreting the language of the statute.  See Bausch & Lomb, Inc. v. United States, 21 CIT 166, 174, 957 F. Supp. 281, 288 (1997), aff'd, 148 F.3d at 1363.[3]

---

[3] The explanatory notes are not legally binding on the United States, yet they "generally indicate the 'proper interpretation' of provisions within the HTSUS . . . [and] are persuasive authority for the Court when they specifically include or exclude an item from a tariff heading." Sabritas, 22 CIT at 62, 998 F. Supp at 1127.

Note 5(b)(ii) to Chapter 85 sets forth the definition for items classified under heading 8542 as "electronic integrated circuits and microassemblies." Such items include "hybrid integrated circuits in which passive elements . . . obtained by thin- or thick-film technology and active elements . . . obtained by semiconductor technology, are combined to all intents and purposes indivisibly, on a single insulating substrate . . . ." HTSUS Ch. 85 Note 5(b)(ii). The <u>Explanatory Note</u> further elaborates and states that hybrid integrated circuits "are microcircuits built up on an insulating substrate on which a thin or thick film circuit has been formed." The <u>Explanatory Note</u> further provides that "the components forming a hybrid integrated circuit must be combined <u>to all intents and purposes indivisibly</u>, i.e., though some of the elements could theoretically be removed and replaced, this would be along and delicate task which would be uneconomic under normal manufacturing conditions." <u>Id.</u> (emphasis in original).

The statute and accompanying <u>Explanatory Note</u> set forth the scope of heading 8542 and the definition of hybrid integrated circuits. Here, whether or not Motorola actually removes or replaces some of the components forming the subject merchandise is irrelevant. The definition of hybrid integrated circuits does not contemplate the actions of a single manufacturer or importer.

Rather, the statute requires that the components of the item be combined to all intents and purposes indivisibly, on a single substrate.  The Explanatory Note indicates that the indivisibility element is measured by whether it is uneconomical or impractical to remove or replace the components from the substrate.  In the present case, Motorola has failed to present evidence indicating that the subject merchandise meet this requirement.  While Motorola does not remove or replace the components from the substrate or have the intention to do so, the subject merchandise fail to meet the definition of hybrid integrated circuits.[4]  See Motorola's Mem. at 30.  Motorola's decision to keep the components on the substrate intact does not render the subject merchandise indivisible.  Consequently, Customs properly determined that the subject merchandise do not satisfy the definition of hybrid integrated circuits and are not classifiable under heading 8542 of the HTSUS.  Consequently, Customs properly classified the subject merchandise under heading 8536 of the HTSUS, and the decision set forth in HQ 961050 is entitled Skidmore respect.

_____

[4]      Motorola does not dispute Customs' expert who stated that there is commercially available equipment that can be used to remove the components from the substrate.  See Motorola's Reply at 4.  Motorola also "concedes that theoretically the components can be removed and that other companies making different articles may remove the elements."  Motorola's Mem. at 30.

### III. Customs' Failure to Publish HQ 961050 in the <u>Customs Bulletin</u> Did Not Violate 19 U.S.C. § 1625(c)

#### A.    Statutory Background

Section 1625 of Title 19 of the United States Code sets forth certain measures Customs must take with respect to interpretive rulings and decisions.  Customs must publish in the <u>Customs Bulletin</u> or make available for public inspection "any interpretive ruling (including any ruling letter, or internal advice memorandum) . . . ."  19 U.S.C. § 1625(a) (1994).  Section 1625(c)(1) of Title 19 of the United States Code directs Customs to publish in the <u>Customs Bulletin</u> a decision that modifies or revokes interpretive rulings or decisions that have been in effect for at least 60 days. Customs is also directed to publish decisions that modify Customs' previous "treatment" of "substantially identical transactions." <u>See</u> 19 U.S.C. § 1625(c)(2).  The statute states, in pertinent part:

(c) **Modification and revocation**
   A proposed interpretive ruling or decision which would—

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin.  The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision.

19 U.S.C. § 1625(c).

Customs' regulations define a ruling as "a written statement issued by the Headquarters Office . . . that interprets and applies the provisions of the Customs and related laws to a specific set of facts." See 19 C.F.R. § 177.1(d)(1) (1998). A ruling letter is defined as "a ruling issued in response to a written request therefor and set forth in a letter addressed to the person making the request or his designee." Id. With respect to the effect of ruling letters, Customs' regulations state that a ruling letter "represents the official position of the Customs Service with respect to the particular transaction or issue described therein and is binding on all Customs Service personnel . . . until modified or revoked." 19 C.F.R. § 177.9(a)(1998). Furthermore, "[i]n the absence of a change of practice or other modification or revocation which affects the principle of the ruling set forth in the ruling letter, that principle may be cited as authority in the disposition of transactions involving the same circumstances." Id. Ruling letters indicating the proper classification of merchandise under the HTSUS "will be applied only with respect to transactions involving articles identical to the sample submitted with the ruling request or to articles whose description is identical to the description set forth in the ruling letter." 19 C.F.R. § 177.9(b)(2).

**B.    HQ 961050 Does Not Modify or Revoke a Prior Interpretive Ruling Letter**

**1.    Contentions of the Parties**

**a.    Motorola's Contentions**

Motorola complains that Customs' liquidation of the subject merchandise pursuant to HQ 961050 violated 19 U.S.C. § 1625(c)(1). See Motorola's Mem. at 12-20. Specifically, Motorola contends that the classification of the subject merchandise modifies or revokes the two pre-classification ruling letters obtained by Motorola in 1992 and 1994 ("PRLs").[5]  See id. at 12-13.  Consequently, by liquidating the subject merchandise under heading 8536 without first publishing HQ 961050 in the Customs Bulletin, Customs violated 19 U.S.C. § 1625(c)(1).  See id. at 13.

Motorola argues that the PRLs meet the definition of the term "interpretive ruling" because 19 U.S.C. § 1625(a) includes "any ruling letter, or internal advice memorandum[] or protest review decision under this chapter with respect to any customs transaction

---

[5]    In 1992, Motorola sought and obtained Customs' opinion as to the classification of six models of nickel-chemistry battery hybrid integrated circuits. See Motorola's Mem. at 11.  In PRL 878763, Customs classified the six models under subheading 8542.20.00, the 1992 version of subheading 8542.40.00, of the HTSUS.  See id. Similarly, Motorola obtained Customs' opinion as to the classification of other models of nickel-chemistry battery hybrid integrated circuits in 1994.  See id.  In PRL 894316, Customs' classified the six models under subheading 8542.40.00 of the HTSUS and again classified three of the hybrid integrated circuits previously classified in PRL 878763 under subheading 8542.40.00 of the HTSUS.  See id.

. . . ." Id. at 14 (quoting 19 U.S.C. § 1625(a)). If Congress intended to exclude PRLs from the definition, then it would have explicitly done so. See id. Furthermore, Congress did not provide Customs with the discretionary power to interpret the statute because the language therein "indicates that Congress intended for Customs to follow the procedural requirements of Section 1625(c) when it issues an interpretive ruling or decision." Id. at 15. In American Bayridge Corp. v. United States, 22 CIT 1129, 35 F. Supp. 2d 922 (1998), vacated on other grounds, 217 F. 3d 857 (Fed. Cir. 1999), the Court reviewed the legislative history of the statute and rejected Customs narrow interpretation of 19 U.S.C. § 1625(c). See Motorola's Mem. at 14-16. The Court opined that the legislative history of the statute indicates that Congress did not intend to grant Customs discretion. See id. The Court should rely on American Bayridge and reject Customs' narrow interpretation of the statute because Customs in this case "has read an unwarranted exception into the statue to limit the scope of Section 1625(c)." Id. at 16.

Motorola also notes that Customs' literature explaining PRLs indicates that they are binding classification rulings, which stay in effect until modified or revoked by Customs. See id. at 18. The characterization of the PRLs as anything other than rulings is contrary to Customs' description of the Pre-Importation Review

Program ("Program").[6] See id. Motorola asks the Court to give the term "ruling" in 19 U.S.C. § 1625(c) the same definition provided for purposes of 28 U.S.C. § 1581(h), as a determination as to the treatment for the contemplated transaction. See id. at 19 (citing Holford USA Ltd., Inc. v. United States, 19 CIT 1486, 1489-90, 912 F. Supp. 555, 558 (1995)). Motorola argues that "[i]f Congress had intended the word 'ruling' in [19 U.S.C. § 1625(c)] to be different from that applied elsewhere in Customs law, it would have express[ed] such an intent." Id. at 19. Consequently, Motorola deduces that Customs' interpretation of the statute "is inconsistent with (1) the express terms of PRLs 878763 and 984316 [;] (2) the objectives of the Pre-Importation Review Program[;] and (3) prior judicial and regulatory definitions of the phrase 'ruling.'" Id. at 17.

Motorola asserts that HQ 961050 modifies or revokes the PRLs, even though it involved merchandise with different part numbers. See Motorola's Reply at 14-15. Motorola notes that there are no published guidelines indicating whether Motorola should have contacted Customs for a new PRL if a part number changed. See id. Motorola further asserts that four of the items at issue "are

---

[6] Motorola's PRLs were issued pursuant to the Program, a cooperative, voluntary program between Customs and importers. See Customs' Mem. at 25. Under the Program guidelines, Customs issues PRLs to importers indicating how merchandise specified therein will be classified upon entry. See Motorola's Mem. Ex. 4.

substantially identical to the items that were listed on the PRLs [which] confirms that Motorola did not have to report back to Customs because the nature of its merchandise had not changed." Id. at 15. The method Motorola used to indivisibly combine the four remaining items and the use of those items also remained the same. See id. Consequently, Motorola contends that its decision not to seek a new PRL was reasonable because it had obtained "two PRLs that both classified this type of merchandise in HTSUS Heading 8542." Id.

### b. Customs' Contentions

Customs replies that Motorola has failed to establish the required elements of 19 U.S.C. § 1625(c)(1). See Customs' Mem. at 22-28. Motorola has failed to demonstrate that HQ 961050 either modifies or revokes a prior interpretive ruling or decision which has been in effect for at least 60 days. See id. at 22. Customs argues that, although the definition of "interpretive ruling" encompasses HQ 961050, it does not encompass either of the PRLs. See id. at 24. The PRLs are not interpretive rulings because "the common meaning of the term 'interpretive' involves something that provides an explanation." Id. To be considered interpretive rulings, the PRLs must explain a statute or provide an explanation of Customs' interpretation of the statute. See id. Interpretive rulings, Customs notes, are "publically available complex written

analyses by Customs interpreting and applying the facts and law."
Id.  The PRLs do not meet the requirements of interpretive rulings
because they lack detail and analysis, and do not include an
interpretation of how Customs law applies to the specific set of
facts.  See id. at 26.  Moreover, the PRLs are not interpretive
rulings because they are "'bare-bones,' consisting only of a list
of article identifiers, brief descriptions and tariff numbers."
Id.  Customs relied on the characteristics of each item provided by
Motorola and did not review or analyze every item identified in the
PRLs.  See id.

   Customs also notes that pursuant to 19 U.S.C. § 1625(a), an
interpretive ruling, ruling letter, internal advice memorandum or
protest review decision must be published in the Customs Bulletin
or otherwise made publically available.  See id. at 24.  Customs
argues that 19 U.S.C. § 1625(a) must be read in pari materia with
subsection 1625(c).  See id. Customs' argues that the PRLs are not
encompassed by 19 U.S.C. § 1625(c) because they were not published
in the Customs Bulletin or otherwise made publically available.
See id.  The PRLs were only given to Motorola and apply exclusively
to Motorola's import transactions, as defined by the article
identifiers and tariff numbers.  See id. at 26.  Consequently,
Customs' decision in HQ 961050 does not modify or revoke a prior
interpretive ruling or decision because the PRLs do not meet the

definition of "interpretive ruling."

Customs alternatively argues that even if the PRLs are interpretive rulings, HQ 961050 did not modify or revoke them. See id. at 28. Rather, HQ 961050 did not involve "articles bearing part numbers which appear on either of the preclassification rulings . . . ." Id. Customs asserts that "Motorola confuses the 'substantially identical transactions' language of section 1625(c)(2), which involves the modification of a treatment, with the language of 1625(c)(1) dealing with the modification or revocation of a prior interpretive ruling." Def.'s Reply Pl.'s Resp. Def.'s Cross-Mot. Summ. J. ("Customs' Reply") at 12. Customs maintains that the PRLs apply only to the merchandise they identify therein. See id. Consequently, HQ 961050 and the PRLs are unrelated rulings and the former does not revoke or modify any determination rendered in either of the PRLs. See Customs' Mem. at 28.

### 2. Analysis

Both parties assert that the central issue is whether the PRLs are "interpretive rulings" within the scope of the statute. It is uncontested that HQ 961050 is an interpretive ruling. See Customs' Mem. at 24; Motorola's Mem. at 13. Consequently, the Court must determine (1) whether the PRLs are interpretive rulings under 19 U.S.C. § 1625(c)(1), and (2) if the PRLs are interpretive rulings,

whether HQ 961050 modifies or revokes them. For the reasons set forth below, the Court finds that the PRLs meet the definition of interpretive rulings, and that HQ 961050 does not modify or revoke a prior interpretive ruling. Accordingly, Customs failure to publish HQ 961050 in the <u>Customs Bulletin</u> did not violate 19 U.S.C. § 1625(c)(1).

First, the Court agrees with Motorola's assertion that the PRLs are "interpretive rulings." The statute defines "interpretive ruling" as any ruling letter, internal advice memorandum or protest review decision. <u>See</u> 19 U.S.C. § 1625(a). The statute directs Customs to publish such interpretive ruling in the <u>Customs Bulletin</u> within 90 days after the date of issuance. <u>See</u> <u>id.</u> Customs notes that the PRLs do not meet the definition of an interpretive ruling because neither was published in the <u>Customs Bulletin</u>; the PRLs were made available only to Motorola. <u>See</u> Customs' Mem. at 26. Customs' logic, however, is unconvincing. The statute does not state that to be considered an interpretive ruling the letter must be published in the <u>Customs Bulletin</u>. Rather, the statute directs Customs to publish interpretive rulings, which includes any ruling letter or internal advice memorandum, in the <u>Customs Bulletin</u>. <u>See</u> 19 U.S.C. § 1625(a). A letter may be an interpretive ruling even if Customs fails to publish such a ruling letter.

Contrary to Customs contention, the PRLs do interpret and apply Customs law to a particular set of facts. Customs notes that its regulation define a "ruling" as a written statement "that interprets and applies the provisions of the Customs and related laws to a specific set of facts." Customs' Mem. at 25 (quoting 19 C.F.R. § 177.1(d)(1)). Customs argues that the PRLs do not fulfill either one of these requirements because they fail to give an interpretation of the law or analyze how the law applies to a specific set of facts. See id. at 26. The Court, however, disagrees with Customs' assertions. Under the Program, Customs' "classification rulings [are] based on an item-by-item review of the importers product inventory." Motorola's Mem. Ex. 3 at 3. In determining the classification of an item, Customs implicitly analyzes each item. Otherwise, Customs could not properly classify the merchandise identified in the PRLs. Moreover, the PRLs implicitly provide an interpretation of Customs law that is applied to a specific set of facts.

The purpose of the Program, according to Customs' literature, is "to resolve classification, valuation, and admissibility issues prior to importation thereby expediting import processing." Id. at 1. Customs' list of items and their respective classification in the PRLS binds Customs. See id. at 3. In making a binding ruling, Customs must interpret and apply the HTSUS to the merchandise at

issue. Failure to do so would lead to classifications that are arbitrary and not in accordance with law. Although the PRLs are "bare-bones," they contain a list of identifiers, brief description and tariff numbers indicating Customs' classification determination.[7] See Motorola's Mem. Ex. 1 & 2. The review process Customs undertakes when preparing a PRL requires an interpretation and application of the relevant HTSUS heading. Based on the definition of "interpretive rulings" offered by Customs, the Court finds that, for the purposes of 19 U.S.C. § 1625(c)(1), the PRLs are prior interpretive rulings.

Second, although the PRLs are interpretive rulings, HQ 961050 does not modify or revoke them. Customs is required to publish in the Customs Bulletin any interpretive ruling or decision, if and only if, it modifies or revokes a prior interpretive ruling. See 19 U.S.C. § 1625(c)(1). Each PRL applies "only to shipments of the merchandise actually reviewed and covered under the specific ruling decision." Motorola's Mem. Ex. 3 at 4. In its description of the Program, Customs states that PRLs will be made available only "in those instances where the importer's product inventory lends itself to an item-by-item review . . . ." Id. at 3. Consequently,

---

[7]     Although the PRLs do not contain a detailed explanation of Customs' determination, the PRLs announce Customs' decision based on an interpretation of the statute. In order to be "interpretive rulings," the PRLs do not have to contain a detailed description of Customs' reasoning.

Customs pre-classification ruling binds Customs only with respect to the items identified in the PRLs and not any other merchandise, even if it is substantially identical.

In the case at bar, Motorola does not argue that the subject merchandise is covered by the PRLs. Rather, Motorola argues that the PRLs identify certain items that are substantially identical to some of the subject merchandise. See Motorola's Reply at 15. For the remaining subject merchandise, Motorola argues that they were made the same way and have the same use as the articles listed in the PRLs. See id. Based on the similarities of the merchandise identified in the PRLs and the subject merchandise, Motorola argues that HQ 961050 modifies or revokes a prior interpretive ruling. See id. Motorola's arguments, however, are untenable. The merchandise covered by HQ 961050 is different than that covered by the PRLs. HQ 961050 is an interpretive ruling or decision that has no bearing whatsoever on the merchandise identified in the two prior PRLs. Accordingly, the Court finds that Customs failure to publish HQ 961050 is not a violation of 19 U.S.C. § 1625(c)(1) because it is an interpretive ruling or decision that does not modify or revoke a prior interpretive ruling.

**C.    HQ 961050 Modifies the Treatment Previously Accorded to Certain Substantially Identical Transactions**

**1. Contentions of the Parties**

**a. Motorola's Contentions**

Motorola alternatively argues that Customs violated 19 U.S.C. § 1625(c)(2).  See Motorola's Mem. at 20.  Motorola contends that HQ 961050 effectively modified the treatment Customs afforded to substantially identical merchandise and, therefore, it should have been published in the Customs Bulletin.  See id.  Motorola argues that the disposition of merchandise prior to the issuance of HQ 961050 constitutes a "treatment."  Furthermore, the merchandise Motorola imported prior to Customs' classification of the subject merchandise under HTSUS heading 8536 (the "earlier merchandise") is "substantially identical" to the subject merchandise. Consequently, the classification of the subject merchandise under heading 8536, modified the "treatment" of "substantially identical transactions," and Customs was required to publish its decision in the Customs Bulletin.

First, Motorola argues that classification of the subject merchandise under heading 8536 of the HTSUS modifies the treatment afforded to merchandise imported pursuant to the PRLs.  See id. Such classification also modified the treatment afforded to over 900 entries of substantially identical merchandise imported by Motorola between May 1995, and May 1997.  See id.  Customs concedes

that its liquidation of ten models of hybrid integrated circuits in over 900 entries can constitute a "treatment" for purposes of 19 U.S.C. § 1625(c)(2).  See id.  Customs maintains, however, that since the 900 entries were on bypass status they could not receive a "treatment."  See id.  Motorola  asserts that this narrow interpretation of the term "treatment" does not comport with the Court's broad interpretation, in Precision Specialty Metals, Inc. v. United States, 24 CIT 1016, 1040-44, 116 F. Supp. 2d 1350, 1373-78 (2000).  The Court held that the payment of 69 drawbacks during a four-and-a-half year period constituted a "treatment."  See id. Motorola further asserts that even if the subject merchandise is on "bypass status," Customs remains responsible for the classification of the imported items.  See Motorola's Reply at 17.  Consequently, Motorola maintains that the consistent classification of over 900 entries during a two-year period, as well as the classification of merchandise pursuant to the PRLs, also constitutes a "treatment." See Motorola's Mem. at 22.

    Second, Motorola argues that the subject merchandise and the earlier merchandise are "substantially identical."  See id. at 23-28.  Both were made using the same method of construction and their functions are the same: (1) they connect the charging device and the battery cells; (2) they connect the cell phone or two way radio and the battery cells; (3) they identify the battery pack to the

charging device; (4) they sense battery cell temperature; and (5) they provide a safety mechanism. See id. at 23. Motorola notes that there are differences between the earlier and subject merchandise. See id. at 25. Yet, Motorola argues that the test is based on "substantial" and not "exact" identity, and even "Customs' expert considers them substantially identical." Id. at 25. Furthermore, Customs' expert agreed that four of the subject merchandise, the nickel-chemistry assemblies, are substantially identical to the hybrid integrated circuits covered by the PRLs and the merchandise imported between May 1995, and May 1997. See id. The criteria used to determined substantial identity should be (1) the function and use of the item; (2) the presence of at least one active and one passive element, and (3) the use of one substrate and the method of attaching the active and passive elements to the substrate. See id. at 27-28. Based on these criteria, Motorola contends that the subject merchandise are substantially identical to the earlier merchandise. See id. at 28.

### b. Customs' Contentions

Customs replies that Motorola has failed to demonstrate that the application of the PRLs "creates a 'treatment' that would trigger [19 U.S.C. § 1625(c)(2)] for any articles not specifically identified therein." Customs' Mem. at 28. The guidelines of the Program provide that each PRL applies specifically to the shipments

of merchandise actually reviewed and encompassed within.  See id.
The PRLs encompass only the part numbers identified, and "Motorola
was obligated to update the information it submitted to Customs if
it wanted to have any additional articles treated in the same
manner."  Id. at 29.  The PRLs do not demonstrate a "treatment" by
Customs because they apply to specific items identified therein.
See id.

  Customs also argues that the liquidation of over 900 entries
of merchandise does not establish a "treatment" under the statute.
See id. at 29-32.  Customs concedes that, in some instances, the
liquidation of so many entries under a provision may constitute a
"treatment."  See id. at 29.  The facts in this case, however, do
not establish such a finding.  See id.  The entries liquidated
between May 1995, and May 1997, were on "bypass status" and did not
involve any action by a Customs official.  See id. at 30.  Customs
also notes that the facts of this case are different from those in
Precision, 24 CIT at 1039-44, 116 F. Supp. at 1373-78, which
Motorola cites in support of its argument.  Customs points out that
in Precision, 24 CIT at 1039-44, 116 F. Supp. at 1373-78, 69
drawback claims were granted because of actions performed by
Customs.  See Customs' Mem. at 30.  In the case at bar, however,
Customs did not take any action because over 900 entries were on
"bypass status" and not reviewed prior to liquidation.  See id.

Customs further contends that the regulations for the implementation of 19 U.S.C. § 1625(c) were recently amended to exclude the consideration of bypass entries for section 1625(c)(2) purposes. See id. Under the new regulation, "Customs will give no weight whatsoever to informal entries and to other entries or transactions which Customs, in the interest of commercial facilitation and accommodation, processes expeditiously and without examination or Customs officer review." Id. (quoting 19 C.F.R. § 177.12(c)(ii) (2003)). Customs acknowledges that the subject merchandise was entered prior to the amendment, yet Customs argues that "the Court should accord the highest degree of deference to this amendment." Id. Customs maintains that the regulation is entitled to Chevron deference, and notes that in Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735 (1995), a regulation was entitled to Chevron deference even though it had been enacted after the initiation of the lawsuit. See Customs' Mem. at 31. Consequently, Customs asserts that the Court should not consider the 900 entries, which were on "bypass status," in determining "whether Motorola has established a 'treatment' of its merchandise as hybrid integrated circuits." Id. at 32.

Customs concedes that if there was a "treatment" pursuant to 19 U.S.C. § 1625(c)(2), then "four of the eight articles in issue are 'substantially identical' to at least some of the articles

provided by Motorola to [Customs] for comparison purposes." Id. at 33. Citing the dictionary, Customs argues that the remaining four articles are not "substantially identical" to the merchandise submitted for comparison, unless they "have almost the same essential characters or features." Id. at 34. Customs maintains that the four articles at issue do not pass this test and notes that "Motorola wants the Court to take the most expansive view possible when comparing the imported circuit assemblies and ignore the significant differences in technology, construction and function among these articles." Id. at 35. Customs urges the Court to reject Motorola's interpretation because of the differences between the four articles at issue, which are used with lithium-ion battery cells (the "Lithium-ion Assemblies"), and those submitted by Motorola for comparison, which are used with nickel based batteries (the "Nickel Assemblies"). See id. at 35-37. Based on these differences, Customs requests the Court "follow the opinion of [Customs'] expert and find that the importations of four of the eight articles in issue are not 'substantially identical transactions' to importations of any other flexible circuit assemblies relied on by Motorola for purposes of establishing a 'treatment'" under 19 U.S.C. § 1625(c)(2). Id. at 37-38.

### 2. Analysis

To demonstrate a violation of 19 U.S.C. § 1625(c)(2), Motorola

must show that HQ 961050 was an interpretive ruling or decision which modified a "treatment" previously accorded by Customs to "substantially identical transactions." Motorola must show that Customs failed to follow the notice and comment process outlined in the statute. It is uncontested that HQ 961050 is an interpretive ruling or decision and that it was not published in the Customs Bulletin. Consequently, the Court must determine whether Customs afforded a "treatment" to "substantially identical transactions."

First, the Court finds that Motorola has successfully demonstrated that Customs' liquidation of over 900 entries was a "treatment" under the statute. In determining the meaning of a term that is undefined in a statute, the Court normally gives such term its ordinary, contemporary, common meaning. See Perrin v. United States, 444 U.S. 37, 42 (1979); see also Precision, 24 CIT at 1042, 116 F. Supp. at 1376. The Court has previously noted that the ordinary definition of the term "treatment" includes "words such as 'often', 'customarily' and 'pattern' — all terms which necessitate multiple occurrences." Precision, 24 CIT at 1042, 116 F. Supp. 2d at 1376. The term "treatment" signifies a pattern or some form of customary practice. See id. The statute uses the term "treatment" with reference to "substantially identical transactions," which indicates that a single antecedent transaction is not enough to trigger the statute. See Precision, 24 CIT at

1043, 116 F. Supp. 2d at 1376-77.  Moreover, "[t]he term 'treatment' looks to the <u>actions</u> of Customs, rather than its 'position' or policy."[8]  <u>Id.</u> (emphasis in original).

In the case at bar, Customs concedes that "so many liquidations under a claimed provision might, in some cases, create a 'treatment'" for 19 U.S.C. § 1625(c)(2) purposes.  Customs' Mem. at 29.  Customs argues, however, that "the circumstances presented here do not warrant such a finding."  <u>Id.</u>  Customs notes that the over 900 entries liquidated between May 1995, and May 1997, were on "bypass status" and, therefore, did not involve any action performed by Customs.  <u>See</u> <u>id.</u> at 30.  The Court, however, disagrees.  As the Court has previously noted, "Customs uses its bypass procedures to manage its workload," and reviews the entries' tariff classification for accuracy.  <u>G&R Produce Company v. United States</u>, 27 CIT ___, ___, 281 F. Supp. 2d 1323, 1333 (2003).  Moreover, although the entries are on "bypass status," Customs

---

[8]    The term "position" is defined as a practice or policy which entails a conscious decision by Customs.  <u>Precision</u>, 24 CIT at 1043, 116 F. Supp. 2d at 1377.  The "treatment" afforded an item is not related to the "position" taken by Customs, but rather is just an indicia of how the item was treated or afforded in the past by Customs.  <u>See</u> <u>id.</u>  Accordingly, "a treatment [or action] may be found where a 'position' [or policy might not — [] the definition of 'treatment' does not require publication or liquidation among many ports over many years."  <u>Id.</u>

continues to randomly sample and review them for accuracy.[9]  See id.  Accordingly, the Court finds that the liquidation of over 900 entries of merchandise, which are on "bypass status," require Customs to act and constitute a "treatment" for purposes of the statute.

Although 19 C.F.R. § 177.12(c)(ii) was promulgated after the commencement of the current litigation, Customs argues that the Court may still consider it in deciding the case at bar.  See Customs' Mem. at 30-32.  Moreover, Customs asserts that the relevant regulation is entitled to Chevron deference because the statute is silent or ambiguous with respect to the specific issue, and Customs' interpretation is a permissible construction of the statute.  See id. (citing Chevron, 467 U.S. at 842).  The Court, however, does not agree with Customs.  The regulation does not deserve Chevron deference because the statute directly speaks to

---

[9]      Customs mischaracterizes what "bypass status" means in stating that "the vast majority of the entries [in G&R Produce, 27 CIT ___, 281 F. Supp. 2d 1323 (2003),] were 'bypass' entries, meaning that the entries were filed electronically and no Customs official had actually reviewed them prior to liquidation." Customs' Reply at 13-14 (emphasis added).  The Court points out that "[i]n order to place entries on bypass, Customs reviews the entries' tariff classification for accuracy." G&R Produce, 27 CIT at ___, 281 F. Supp. 2d at 1333.  To place an entry on "bypass status" requires Customs to perform some action in reviewing an entry's tariff classification.

the precise question at issue.[10]

In <u>Chevron</u>, 467 U.S. at 842, the United States Supreme Court set forth a two-prong analysis that governs the degree of judicial deference for agency interpretations of statutes, which the agency is charged with administering.  Under <u>Chevron</u>, the first question for the Court is "whether Congress has directly spoken to the precise question at issue."  467 U.S. at 842.  If the Court finds that "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  <u>Id.</u> at 842-43. With respect to 19 U.S.C. § 1625(c)(2), the Court finds that the intent of Congress is clear on its face and that the statute is not silent or ambiguous.  <u>See</u> <u>Precision</u>, 24 CIT at 1040, 116 F. Supp. 2d at 1374 (stating that "[t]he lack of any specific legislative history [for 19 U.S.C. § 1625(c)], however, does not eliminate this court's duty to employ the plain meaning of the language that the Congress adopted").  Congress has neither explicitly nor implicitly left a gap to be filled by Customs because the meaning of the term "treatment" is not ambiguous.  <u>See</u> <u>Chevron</u>, 467 U.S. at 842. Accordingly, Customs' statutory interpretation in 19 C.F.R. §

---

    [10]   Customs' regulation interprets the term "treatment" used in 19 U.S.C. § 1625(c)(2).  Because such interpretation is not permissible under <u>Chevron</u>, the Court will not address whether a new regulation should have an effect on the outcome of litigation initiated prior to the issuance of such regulation.

177.12(c)(ii) is not based on a permissible construction of the statute and, therefore, the regulation is not entitled to <u>Chevron</u> deference.

Second, although the liquidation of over 900 entries constitutes a "treatment" for purposes of 19 U.S.C. § 1625(c)(2), Motorola has failed to fully demonstrate that such treatment was accorded by Customs to "substantially identical transactions." Customs concedes that four of the eight subject merchandise[11] are "substantially identical" to the articles submitted by Motorola for comparison purposes. <u>See</u> Customs Mem. at 33. The Court agrees with Motorola that "there is no dispute that the nickel-chemistry based [subject merchandise] are substantially identical to the nickel-chemistry based [hybrid integrated circuits] in the PRLs and the [hybrid integrated circuits] imported between May 1995 to May 1997." Motorola's Mem. at 25. Customs violated the statute with respect to the four Nickel Assemblies by failing to publish HQ 961050 because it was an interpretive ruling or decision that modified or revoked a treatment Customs previously accorded to substantially identical transactions.

With respect to the remaining four Lithium-ion Chemistry Assemblies, the Court finds that Customs did not violate the

---

[11] These are part numbers 5108189Z16, 5180569A02, 5104035T03 and 5180569A03. <u>See</u> Customs' Mem. Ex. 4.

statute. Motorola correctly asserts that to determine whether "substantially identical transactions" exist, the "test is 'substantial' and not 'exact.'" Motorola's Mem. at 25. The plain meaning of the phrase "substantially identical" can be discerned from the dictionary definitions of each term. See Perrin, 444 U.S. at 42. The term "substantial" is defined as "[b]eing of considerable importance, value, degree, amount, or extent." Webster's II New Riverside University Dictionary 1155 (1988). The term "identical" is defined as "[b]eing the same[,] exactly equal and alike[,] [h]aving such similarity or near resemblance as to be fundamentally equal or interchangeable." Id. at 607. Motorola asserts that the criteria for determining substantial identity is (1) the use and function of an item; (2) the presence of at least one active and one passive element; (3) the use of one substrate; and, (4) the method of attaching the active and passive elements to the substrate. See Motorola's Mem. at 27-28. The Court does not agree because such criteria do not meet the definitions of the terms "substantially identical."

Although the Litium-ion Chemistry Assemblies and the Nickel Assemblies may be made in much the same manner and serve similar purposes, the two sets of assemblies fall short of being identical. The definition of the term "identical" requires the two assemblies to "have such similarity or near resemblance as to be fundamentally

equal or interchangeable." <u>Webster's II</u> at 607. The record indicates that the Lithium-ion Chemistry Assemblies and the Nickel Assemblies are not "fundamentally equal" because they have significant differences. Principally, one set of assemblies are used with litium-ion battery cells while the others are used with nickel-based batteries. Consequently, Customs did not violate 19 U.S.C § 1625(c)(2) with respect to the Lithium-ion Chemistry Assemblies.

**CONCLUSION**

The Court finds that Customs' properly classified the subject merchandise under heading 8536 of the HTSUS. Moreover, Customs' failure to publish HQ 916050 did not violate 19 U.S.C. § 1625(c)(1). Although the PRLs are interpretive rulings or decisions, HQ 916050 deals with merchandise that is not identified in the PRLs. Accordingly, HQ 916050 did not modify or revoke a prior interpretive ruling or decision. The Court, however, finds that Customs violated 19 U.S.C. § 1625(c)(2) with respect to the Nickel Assemblies but not the Lithium-ion Chemistry Assemblies. Accordingly, Motorola's motion for summary judgment is granted in part and denied in part, and Customs' cross-motion for summary

judgment is granted in part and denied in part.  Judgment shall be entered accordingly.


                                        ___/s/ Nicholas Tsoucalas___
                                        **NICHOLAS TSOUCALAS**
                                        **SENIOR JUDGE**



Dated:     August 13, 2004
           New York, New York